(Decided 21st June, 1893.)

The Baltimore and Ohio Railroad Company *vs.* The Baltimore and Ohio Employés' Relief Association, and others.

*Railroad Employés' Relief Association — Dissolution — What constitutes Assets—Distribution—Preferred claims.*

By the charter of the Baltimore and Ohio Employés' Relief Association, the powers of relief were confined to a committee of management which was empowered to adopt such constitution and by-laws as might be deemed proper and necessary to accomplish the objects of the association, and to alter and amend the same. By the constitution and by-laws adopted provision was made for the relief of the members of the association in case of sickness, accident, and death, but no provision was made for the relief of its members in case of old age or other infirmities. To promote the objects of the association, and to induce its employés to become members thereof, the railroad

company donated $100,000, and agreed besides to pay its operating expenses amounting to $25,000 annually. Afterwards it was agreed between the railroad company and the committee of management that a pension feature should be added to the relief feature, and thus provide for the support and maintenance of such members as by reason of old age were no longer able to remain in the active service of the company. In furtherance of this object the railroad company agreed to appropriate $25,000 annually to the pension feature, provided the association would agree to pay its own operating expenses. This offer of the railroad company was accepted by the committee of management; but there was no amendment of the constitution making provision for such pension feature. HELD:

That the committee of management had no power to make the agreement whereby the railroad company was released from its obligation to pay the operating expenses of the association, and that all sums paid for such operating expenses by the association from the date of said agreement till its dissolution, should be treated as part of the gross assets of the association.

The constitution and by-laws of the association provided for the payment of a specific sum to each member in case of sickness, or disability, temporary or permanent, by accident, and in case of death to the person designated to receive the same, or to the legal representative of the deceased. HELD:

That the claims of members for benefits in case of disability by sickness or accident prior to the dissolution of the association, as well as the sum to be paid upon the death of a member to his beneficiary, were preferred claims, and as such entitled to be paid in the distribution of the assets of the association.

APPEAL from the Circuit Court No. 2, of Baltimore City.

This appeal was taken from a decree of the lower Court (HARLAN, J.,) prescribing the terms of accounting between the railroad company, as the assignee and trustee of all the assets of the relief association, on the one hand, and the members of the association in good standing on the 31st of March, 1889, the date of its dissolution, on the other hand. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, ROBERTS, and MCSHERRY, J.

*Geo. Dobbin Penniman,* and *Hugh L. Bond, Jr.,* (with whom was *John K. Cowen,* on the brief,) for the appellant.

*C. Dodd McFarland, George R. Gaither, Jr.,* and *Arthur George Brown,* for the appellees.

ROBINSON, C. J., delivered the opinion of the Court.

The questions in this appeal arise in the distribution of the assets of the Baltimore and Ohio Employés Relief Association. The association was incorporated by the Act of 1882, chap. 358, mainly for the purpose of affording relief to such employés of the railroad company as might become members, in case of *sickness, accident, old age and death.*

The powers of relief were by its charter, confided to a committee of management, consisting of ten persons, one of whom was the President of the Baltimore- and Ohio Railroad Company, four to be appointed by the president of said company, and five to be elected annually by the members of the association. This committee was empowered by the charter to adopt such constitution and by-laws and regulations as may be deemed proper and necessary to accomplish the objects of the association, with power "from time to time, to alter, amend, or repeal any provision of the constitution, by-laws, and regulations."

Under this Act, the relief association was formed for the purpose of relieving the necessities of its members in case of *sickness, accident and death,* but no provision was made by the constitution or by-laws for the relief of its members in case of *old age* or other infirmities. To promote these objects of the association, and to in-

duce its employés to become members thereof, the railroad company made a donation of one hundred thousand dollars to the association, and agreed besides, to pay all its operating expenses, amounting to at least twenty-five thousand dollars annually. Within a few years, its membership numbered at least twenty thousand, and at the time of its dissolution by the repeal of its charter, its accumulated assets amounted to several hundred thousand dollars. These assets are now in a Court of equity for distribution, and the questions are: 1st. What shall be considered as assets belonging to the association? and 2nd. How are assets to be distributed among the members?

*First, as to assets belonging to the Association.* Shortly after its organization and the adoption of a constitution and by-laws providing for the relief of its members in case of sickness, accident, and death, it was deemed advisable by the railroad company and the Committee of management that a *pension feature* should be added to the *relief feature*, the object of which was to provide for the support and maintenance of such members as were by reason of old age no longer able to remain in the active service of the railroad company. And in furtherance of this object, the railroad company agreed to appropriate twenty-five thousand dollars annually to the *pension feature*, provided the relief association would agree to pay its own operating expenses, which amounted, as we have said, to at least twenty-five thousand dollars annually, thereby releasing the railroad company from its obligation to pay the same. This offer of the railroad company was on the 15th July, 1884, accepted by the committee of management; and from that time, until the dissolution of the association, a period of five years, the railroad company paid twenty-five thousand dollars annually to the pension fund, and the association paid its own operating expenses, out of

the funds contributed by its members for relief in case of sickness, accident, and death.

The Court below being of opinion, that the committee of management had no power to make the agreement, whereby the railroad company was released from its obligation to pay the operating expenses of the relief association, decreed that the auditor should treat as part of the gross assets of the association, all sums paid by it for operating expenses from the date of said agreement till its dissolution in 1889. In other words, the Court held that the committee had no power to make an agreement with the railroad company, the effect of which was to charge the payment of the operating expenses upon the *relief fund of the association*, thereby releasing the railroad company from its obligation to pay such expenses. This relief fund was contributed by the members of the association for the purposes of relief in case of sickness, accident, and death; and the constitution provided that it should be used *exclusively for these and for no other purposes*. And, such being the case, the committee of management could not, it is clear, make any agreement the effect of which was to appropriate part of this fund for other and different purposes. This power they could not exercise under the *general powers* belonging to a committee of management or a board of directors. *Burke vs. Smith*, 16 *Wall.*, 395; *Railway Company vs. Allerton*, 18 *Wall.*, 235.

The committee was authorized by the Act of incorporation and by the constitution of the association to alter and amend the constitution at any time it might deem proper, to accomplish the objects for which the association was incorporated. And though in the formation of the relief association no provision was made in the constitution or by-laws for the support of such employés as might be unable by reason of old age to earn the means of support, yet, as this was one of the objects for which

the association was chartered, the committee had the power to alter and amend the constitution and by-laws of the association so as to provide for the relief of such persons. The constitution itself provides the mode and manner by which it may be amended, and declares in express terms that none of its provisions shall be altered, modified, or repealed, except at a general meeting of the committee of management, three months notice being given of any such proposed change or amendment; and further, that no such amendment shall be operative until confirmed by two-thirds of the committee, or by a vote of two-thirds of the members of the association. Now, it is not pretended that in making the agreement with the railroad company, or in adding a pension feature to the relief association, there was any amendment *proposed or adopted by the committee in the manner and according to* the terms of the constitution. It is not pretended that any amendment was proposed and adopted by a vote of two-thirds of the committee at a general meeting called for that purpose, or by a vote of two-thirds of the members of the association. The committee did adopt a resolution accepting the offer of the railroad company, and did agree to pay the operating expenses of the association out of the relief fund, in consideration of the railroad company's contributing twenty-five thousand dollars annually to the *pension fund.* And from the date of that agreement, or when it went into effect, the committee did pay the operating expenses out of the relief fund, and the railroad company did contribute twenty-five thousand dollars annually to the pension fund till the dissolution of the association. There was no amendment, however, of the constitution. On the contrary, every copy issued to the members after this agreement had been made, contained the clause declaring that the railroad company had agreed to pay the operating expenses of the association, thereby *enabling the association*

*to use its relief fund to lessen the contributions of its members.*
And, in addition to this, Art. 9, of the pension feature
declared that in order to provide funds for *sustaining the*
*pension feature without using any of the contributions of*
*members* of the relief feature of the association, "the Bal-
timore and Ohio Railroad Company will annually donate
to it the sum of twenty-five thousand dollars." Here,
then, was a declaration in express terms, that no part of
the fund belonging to the relief association, was to be used
for the purposes of the pension feature; and yet the effect
of the agreement made by the committee with the railroad
company, was to appropriate so much of the relief fund
as might be necessary to pay the operating expenses of
the association, amounting to at least twenty-five thou-
sand dollars annually, thereby necessarily diminishing
the fund to that extent. It was, in effect, an appropri-
ation to that extent of the *relief fund* for the benefit of
*the pension fund.* The committee had the power, as we
have said, to amend the constitution of the association
by adding thereto the pension feature; but whether
having made such an amendment, it could appropriate
any part of the relief fund which had been contributed
by the members for the purposes of relief in case of sick-
ness, accident, and death, to the pension fund, is a
question we need not consider. It is unnecessary to
consider it, because the constitution of the association,
which declared the purposes for which the relief fund
was to be used, was never in fact amended by the com-
mittee in the mode prescribed by the constitution.

It seems to us, therefore, that the Court was right in
saying, that all sums paid by the association for its
operating expenses from 1st October, 1884, to the time
of its dissolution must be considered as part of the gross
assets of the association.

We come now to the only question, in regard to which
it seems to us there can be any real contention.

The constitution and by-laws provided for the payment of a specific sum to each member in case of sickness. They further provided for the payment of a specific sum to a member disabled, either temporarily or permanently by accident; and they further provided, upon the death of a member, for the payment of a specific sum to the person designated to receive the same, or to his legal representative. Now, the Court below held, and properly held, it seems to us, that upon the death of a member before the dissolution of the association, the sum to be paid to his beneficiary was a *preferred claim,* and as such to be paid out of the assets. But the Court at the same time held, that in cases of members disabled by sickness or accident, the right to receive benefits terminated with the dissolution of the association, even though the sickness began and the accident happened before the dissolution. In other words, if a member was killed by an accident happening before the dissolution, and another member was at the same time disabled, the claim of the beneficiary of the deceased member was to be treated as a preferred claim, but the claim of the member disabled was not a preferred claim, and his right to receive benefits terminated upon the dissolution. We do not see on what principle such a distinction as this can be maintained, for the difference in the two cases, it seems to us, is merely a difference in the extent of the injury. There cannot be, it seems to us, any difference in principle between a *matured death claim,* and a *matured accident claim.* Upon the disability of a member by sickness or accident, he was, under the constitution and by-laws entitled to the payment of a specific sum as benefits. The liability of the association thereby became a fixed liability, and the right of the member to the payment of benefits under his contract, thereby became a complete and vested right. The payment of these benefits was

one of the objects for which the association was formed, and for which contributions were paid by its members, and the attainment of that object being still possible, there is no reason why it should be in any manner affected, much less defeated, by the dissolution of the association.

And the several cases relied on by the appellees, instead of supporting, are, it seems to us, so far as they are applicable, all against their contention. In *Mayer vs. Attorney-General*, 32 *New Jersey Equity*, 813, the Court held that in the distribution of the assets of an insolvent mutual life insurance company, the holders of policies matured by death, and the holders of endowment policies, where the risk had terminated by the attainment of the age specified, were to be treated as preferred creditors, and for the reason that by the maturity of these policies, the *status* of the policy holders had been changed. Their relation to the company, said the Court, was the same as the relation of a creditor to a firm, the payment of whose claim is to be preferred to the claim of a member of the firm. But where the risk or endowment had not terminated at the date of the insolvency of the company,—that is, where the policy holder had not attained the specified age,—such policies were not to be treated as matured or preferred claims, even though all the premiums had been paid, because "such policies were continuing risks, as much so," say the Court, "in nature, though not in degree, as ordinary policies covering the full period of life."

And in *Commonwealth vs. Massachusetts Ins. Co.*, 119 *Mass.*, 45, it was decided that a mutual insurance company, is not liable for any loss which occurs after the appointment of the receiver and the judicial sequestration of its property, and that, where *prior losses* absorb all the funds of the company, and it becomes necessary to make assessments upon its members, if the assess-

ments are more than sufficient to pay such losses, the surplus is to be distributed among the members by whom the assessments were paid.

The decision in *Stamm vs. Northwestern Mut. Ben. Ass'n,* 65 *Michigan,* 317, has not, it seems to us, any bearing upon the question now before us. In that case the commissioner of insurance refused to license the association to continue business, and the point decided was that the board of trustees had no power to make assessments for the purpose of paying losses which occurred after the license to do business was refused.

And in *Taylor vs. North Star Mut. Ins. Comp'y,* 48 *North Western Rep.,* 773, the question decided was that policies on which losses have not occurred, are not debts or fixed liabilities of the company, and that losses occurring after the appointment of a receiver to wind up the affairs of an insolvent mutual insurance company cannot be proved or allowed as claims against the company. These cases do not, it seems to us, support in any manner the contention of the appellees, and we do not see on what principle the right of a member to claim benefits for a disability that occurred before the dissolution of the association can be held to cease or terminate with its dissolution. The appellant is, therefore, in our opinion, entitled and ought to have been allowed credit for the payment of all benefits due for accidents and sickness occurring prior to the dissolution up to the time of the auditor's account; and the auditor should have further allowed a sum sufficient to meet in the future any of these claims that may still exist, to be held and paid out by the appellant until all such claims have been paid. For these reasons, the decree will be affirmed in part and reversed in part, and the cause remanded.

*Decree reversed in part, and
affirmed in part, and
cause remanded.*

(Decided 21st June, 1893.)