# SUPERIOR COURT OF BALTIMORE CITY

Filed October 31, 1894.

## STATE OF MARYLAND

### VS.

### THE SUPREME COURT OF THE EQUITABLE LEAGUE OF AMERICA.

*Fetter S. Hoblitzell, J. Cookman Boyd* and *Henry Shirk, Jr.,* for exceptants.

*Frank Gosnell, Jno. P. Poe* and *J. H Wyman* for the ratification of the account.

RITCHIE, J.—

Opinion of His Honor, Judge Ritchie, in the matter of the exceptions to the auditor's account.

The date of filing the petition for forfeiture of charter, the truth of the charges having been established, should be taken as the date which fixes the rights of parties, and all members who were then in good standing are entitled to a dividend out of the assets as of that date.

Under the circumstances of this case the payment of assessments subsequently levied was not necessary in order to preserve the rights of members, and the moneys received therefrom should be treated as a *quasi-pendente lite* fund.

The moneys so received from assessments paid between the filing of the petition and the appointment of receivers should be returned, less such portion thereof as may have already been paid in sick benefits during the said period to members entitled to such return, and less a pro rata deduction for the expenses of management during the same period.

Any excess of sick benefits received over the amount of assessments paid in, as of the date of filing the petition, is not to be charged against what may now be due to members on account of assessments afterwards levied.

In the case of members, who, during the *pendente lite* period, have drawn out in sick benefits more than the amount of assessments paid in during the same period, the difference should be credited upon such dividend as they may be entitled to as of the date of filing the petition.

COURT: I will now pass on the exceptions that have been filed to the auditor's account in the case of the State vs. The Equitable League.

First, as to the receivers' commissions. The amount allowed the receivers, as commissions, is less than it was in the case of the Progressive Endowment League; it is the same that was allowed by Circuit Court No. 2 in a case involving a much larger fund, the case of the Fraternal Circle, and it is very little more than was allowed by the Circuit Court in the case of the Iron Hall, where there was no distribution. The receivers have had a great amount of work to do in this case, and I think the commissions that the account allows them is in accordance with the practice of the equity courts, and is a reasonable amount. The allowance will be ratified.

The next exception is to the auditor's fee of $2,500. I have carefully gone over the work of the auditor in this case, and it is hardly necessary to say to members of the Bar, that the work of an auditor is of such a character as that it cannot be fully appreciated or correctly judged except by those connected with the profession. His compensation is not to be measured by the standard of the salary of a bookkeeper, or the pay of an accountant. The discharge of his duties often requires, as in this case, the exercise of professional knowledge and skill, which such persons do not possess. I find that Mr. McElroy, the auditor, has done a vast amount of work, and has done it very thoroughly. I consider his fee a reasonable one. I may add, in this connection, that if this case had been in the Circuit Court, where the equity rules apply, he would, under the rule providing for notices, have been entitled there to a compensation of more than $500, over and above such services as might have been rendered in the statement of the accounts. Whatever might have been allowed by this court for similar services is included in the fee that has been allowed in the account.

The exceptions filed to the amount paid for clerk hire and general expenses, I will overrule. I have examined these allowances, and I think the amount expended, considering the character of the case, is moderate, and indicates carefulness and a spirit of economy upon the part of the receivers. I will ratify the expense account as it stands.

In the distribution account, the auditor has stated and allowed in books No. 1 and No. 2, the claims of all members who continued to pay assessments after January 10, 1893, when the petition for forfeiture of charter was filed,

and up to November 23, 1893, when the receivers were appointed; and in book No. 3, he stated the claims of those who at one time or another failed in the payment of assessments, prior to the appointment of the receivers. All in book No. 3 he regards as lapsed and recommends their disallowance. The first exception to the distribution account is one that is common to both classes, and that is to the mode of treating payments made for sick benefits. It is claimed by some that the auditor ought to have taken the amount due each member on the face of his claim, calculated his dividend upon that gross amount, and then from the dividend thus derived, have deducted the amount which any particular member might have received in sick benefits. That would not be a correct way of stating the account. The auditor, upon the contrary, h'as first deducted from the total claim the amount paid in sick benefits, and then calculated and allowed the dividend upon the balance still due to or claimed by each certificate holder. This is the correct mode and is approved by all the authorities submitted. Where the sick benefits are less than the claim, they are in the nature of a part payment; the part payment is credited and the member gets his dividend on the balance due.

We come now to book No. 3. This contains the names of members who, it is supposed, have lapsed. There are two classes of certificate holders in this book, and the auditor recommends the rejection of the claims of all of them. The first class consists of those who had lapsed prior to the institution of these procedings, and were not in good standing at the time the petition was filed, but nevertheless have filed their claims. I cannot find any authority that allows them to participate in this fund. The claims of all those who had lapsed prior to the filing of this petition must be rejected.

The second class contained in this book consists of those who were in good standing at the time these proceedings were instituted, but failed to pay all or some of the assessments afterwards levied; these, I think, are entitled to a dividend. I think it would be hard upon them if they were excluded from all participation in this fund, by reason of something for which they were, at least, not altogether responsible. They failed to pay subsequent assessments, it is fair to presume under all the circumstances, not because of their inability to pay, nor because of any unwillingness to pay under ordinary circumstances, but because of the filing by the State of the petition in this case, or of the condition of things brought about by these proceedings. The charges made were to the effect that this Association was carrying on an unlawful business, carrying on a business in violation of the insurance laws of the State. The truth of these charges having been afterwards established, it was thus the conduct of the association, or of those in active charge of its management, which caused these proceedings and led to the subsequent condition of affairs. If, therefore, the unlawful acts of this corporation and the consequences to which they led, were the reason why certain members failed to pay any or some of the subsequent assessments, I do not think their certificates ought to be forfeited. From all the circumstances, I think it fair to assume that such was the reason which operated; and such being the case, the members in question, upon the authority of several cases cited, particularly the cases of the Golden Lion in 156 and 159 Mass., had a reasonable excuse for not paying the subsequent assessments. Such members, however, in stopping, took the risk of the truth of the charges made by the State. Had they proved untrue and the petition been dismissed they would have lapsed.

The date of the filing of the petition should, under the circumstances of this case, be taken as the date which fixes the rights of the parties, and all who were then in good standing are entitled to a dividend. Fogg vs. The Golden Lion, 159 Mass., 9; Burdon vs. Safety Fund, 147 Mass., 368; Peltz vs. Financial Union, 19 At. Rep. 668; The Golden Lion, 156 Mass., 431. Such also was the rule by which distribution was made by the Circuit Court in the case of the Fraternal Circle. This question was not distinctly passed upon by that court, but in the opinion of the receivers, all who were in good standing when the bill was filed, were entitled to a dividend, and on their request the court, subject to exception, so instructed the auditor, and all such members were admitted to a dividend without contest. In that case it was pro-

vided that all assessments after the filing of the bill should be paid into a pendente lite fund, and these were subsequently returned in full, but the distribution was made among all who were in good standing when the bill was filed, whether they had availed of the pendente lite fund, or not, as a means of preventing forfeiture.

I have been referred to an order in this case, signed by Judge Harlan, with reference to assessment No. 91, the collection of which was pending when the receivers were appointed. This order recites in effect, that the payment of that assessment need not be made unless its payment was necesary to the reinstatement of some members, who might have failed to pay No. 90. The implication of the order is that the payment of assessments up to that time was necessary in order to preserve the rights of membership. I have conferred with Judge Harlan in respect to this order, however, and he tells me, that he did not examine, or intend to pass on, the question now considered. It was submitted to him by the receivers as a proper order and signed in the usual manner on their recommendation for another purpose. I do not understand that the order was submitted with any view of getting a ruling of the Court on the question now before me, but, the question whether it was necessary to pay assessments until a receiver should be appointed being unadjudicated in this State, this order was submitted by the receivers, for the protection, if necessary, of such as had failed to pay No. 90, but under the by-laws then had a right of reinstatement on certain conditions, which included the payment of both assessments; and Judge Harlan did not intend it to have any further effect.

But while all who were in good standing when the petition was filed are, I think, entitled to a dividend, those who from that time failed to pay any further assessments are entitled to participate only in the fund then on hand. The other members in book No. 3, who were then in good standing, paid one or more of the subsequent fifteen assessments, but stopped paying before the receivers were appointed. Pending these proceeding nearly $150,000 in assessments were received from members who continued to pay after the petition was filed, and during this same period about $50,000 were paid out to such members in sick benefits, thus leaving a net increase in assets of about $100,000. While it would not be fair to exclude those in book No. 3 who were in good standing when the petition was filed, it would be altogether unfair to allow them to participate in the fund, or any part of the fund, which accumulated from the assessments paid by others after they had stopped paying.

It is necessary, therefore, to distinguish this fund accumulated by the payment of assessments levied after the filing of the petition, and made up by the payment of all such assessments by some, and the payment of one or more by others, from the assets which were in hand when the petition was filed. This is necessary in order that all may be put on an equality. The line as to the right of certificate holders to participate is drawn as of the date of the filing of the petition, and a line as of the same date should be drawn between these two funds. According to the authorities cited, the payment of these subsequent assessments was not necessary, under the circumstances of this case, in order to preserve the rights of members. The fair and equitable mode of distribution in this case, in my judgment, is first to treat the payments on assessment No. 76, which was in process of collection when the petition was filed, and the payments on subsequent assessments up to and including No. 90 (all payments on No. 91 having been returned), as if paid substantially into a pendente lite fund. All such assessments should be returned in full, less such portion thereof as may have already been paid in sick benefits during the period between the filing of the petition and the appointment of the receivers, to the members entitled to such return, and subject also to a pro rata deduction on account of the expenses of the management of the association during the same period. The balance of assets, less the expenses of those proceedings and the payment of preferred claims, if any, should be distributed among all those who at the time of the filing of the petition had paid assessment No. 75, including those, if any, who, not having paid that assessment, then had a right of re-

instatement and subsequently complied with the conditions upon which such right depended.

There are some members entitled to a return of assessments, who, when the petition was filed, had drawn out in sick benefits more than they had then paid in. Such excess is not to be charged against the amount due under the assessments afterwards paid. Such sick benefits were paid while the association was in full operation, and in accordance with the terms of their certificates, and had a receiver been appointed on January 10th, 1893, he would have had no claim whatever upon any members for the return of such excess, and their status as of that date cannot now be disturbed. Such excess was in no sense a debt. This question was submitted by the receivers to the Circuit Court in the cause of the Fraternal Circle, but the pendente lite assessments were returned in full, without the deduction of any excess of benefits received over assessments paid, as of the time of filing the bill. See also B. & O. R. R. vs. Employes' Relief Association, 77 Md. 566.

There is one other class to be considered. There are some members who as of January 10th, 1893, will be entitled to a dividend, but who continued the payment of assets and during the subsequent period drew out in sick benefits more than they paid in during the same period. This excess stands upon a different footing. These benefits were paid pending the petition for forfeiture, and out of a fund distinguished from the assets proper. While it is thought to be equitable to return these subsequent assessments, no member ought to be allowed to realize a profit out of them, nor would it be equitable to allow any one to receive more out of this fund than he paid into it. If the excess of benefits in such cases were not accounted for, there would be a deficit in the pendente lite fund, which would fall on the assets proper. Those members, therefore, who during the pendente lite period, have drawn out more than the assessments paid in during the same period, must have the excess credited upon such dividend as they may be entitled to as of the time of filing the petition.

The correctness of this mode of distributing the entire fund now in the hands of the receivers is, I think, supported by the authorities referred to. What I have said disposes of all the exceptions, and I will sign an order sustaining or overruling them, as the case may be, in accordance with the views expressed.