# THE TITLE GUARANTEE AND TRUST COMPANY *vs.* CHARLES B. BURDETTE ET AL.

*Counsel Fees—Bill to Enforce Mechanics' Lien—Proof of Claim—Estoppel—Exception to Auditor's Account.*

When the trustee appointed in an equity cause to make a sale is also an attorney, and renders legal services in connection with the trust estate which enure to the benefit of all parties interested, he will, as a general rule, be entitled to be paid for his professional services out of the common fund.

When one mechanics' lien claimant files a bill for the sale of the property to satisfy claims against it, and his attorney is one of the trustees to make sale, but the claim of the plaintiff is disputed by other parties, and these are represented in the subsequent conduct of the case by their own attorney, then the attorney who filed the bill is not entitled to the allowance of a counsel fee out of the common fund.

After the filing of a bill for the sale of land to enforce a mechanics' lien claim and decree for sale, a mortgagee of the property asked that its counsel be appointed a co-trustee, which was done, and he co-operated with the plaintiff in enforcing the decree for sale, based on the latter's claim, to which the mortgagee made no objection. *Held*, that under these circumstances, the mortgagee is estopped to except to the plaintiff's claim in a distribution of the proceeds of sale.

When the validity of the lien claim of the plaintiff who files the bill for the sale of the property affected, is admitted by the defendant, such admis-

sion is primary proof, and if other creditors deny the validity of plaintiff's claim by intervening petitions, they should take testimony to sustain their allegations before the audit is stated.

Exceptions to claims allowed in an auditor's account must designate a particular error, since a general exception only transfers the examination of the papers from the auditor to the chancellor. The statement in an exception that the claim "is invalid in law and of no force and effect," is too general.

*Decided December 20th, 1906.*

.

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*C. Alex. Fairbank, Jr.*, for the appellant.

*Henry C. Kennard* (with whom was *Jos. P. Merryman* on the brief), for Burdette and Merryman, appellees.

*Arthur Herzog* (with whom was *Allan Cleaveland* on the brief ), for McCullough and Jones, appellees.

PEARCE, J., delivered the opinion of the Court.

On December 16th, 1905, Henry C. Barnes, through his solicitor, Joseph P. Merryman, filed a bill in Circuit Court No. 2, of Baltimore City, against the Independent Methodist Church of the Nazarene, of Baltimore City, a body corporate, which will hereafter be designated "The Church," to enforce a mechanics' lien for work done by him on said church building, and with the bill filed as an exhibit, a copy of his lien claim for $1,099 as recorded in the Clerk's office of the Superior Court. The bill was filed in behalf of Barnes, "and also for such other persons interested herein who may contribute thereto." On the same day the church filed its answer consenting to a decree as prayed, and a decree was passed for sale, appointing the said Joseph P. Merryman, trustee, to make

such sale. On December 23rd, 1905, Barnes assigned his lien claim to Charles B. Burdette, one of the appellees. On January 13th, 1906, the Title Guarantee and Trust Company filed a petition in the case alleging that it held a mortgage, made February 3rd, 1905, for $2,000, against the said church building, payable in sixty monthly installments, none of which had been paid, and that Barnes was one of the trustees of said church, and as such signed said mortgage; that in view of the efforts of said church to escape payment of its obligations, the petitioner would suffer great loss and damage unless some one should be appointed to represent its interest together with Joseph P. Merryman. Mr. Merryman answered this petition on January 25th, denying that the church sought to evade any obligation, and alleging that the petitioners only recourse would be to the funds arising from sale after payment of the mechanics' lien claims, and that if it suffered any loss it would be due to its negligence in not exacting a bond against such liens. He interposed no objection to the appointment of a co-trustee, and subsequently assented to the appointment of C. Alexander Fairbank, who was accordingly appointed February 7th, 1906.

On February 9th, 1906, Clarence E. Jones, filed a petition in the cause, alleging that he held a mechanics' lien claim for $156 against said church; that he was informed and believed that the claim of said Barnes was "false, untrue and invalid," and that his proceeding thereon was "a collusive and conspiring scheme of the parties thereto to defraud and defeat the just claims of the creditors of the church;" that the proceeding was in direct contempt of that Court, inasmuch as said Jones had filed a bill in the same Court upon his claim, on June 30th, 1905, to which said church had demurred, said Barnes making oath that the demurrer was not for delay, and said Jones prayed that the decree passed upon the bill of said Barnes should be "summarily dismissed." This petition was, on hearing, dismissed March 14th, 1906.

On March 23rd, 1906, the trustees filed their report of sale, showing a sale for $2,950, and no exceptions being filed

thereto, the sale was finally ratified on April 25th, 1906. On April 4th, 1906, under an order of Court, the trustees gave notice to all persons having claims against said church to file them with the Clerk of said Court, on or before May 5th, and accordingly on May 3rd, said Clarence E. Jones and R. N. McCullough & Co. filed their respective mechanics' lien claims. In the meantime, Barnes, on April 24th, 1906, filed his petition in the cause, alleging that Mr. Merryman had been employed by him to file the bill and conduct the proceedings for him and all other creditors; that he had received no compensation for his services, and was entitled to be paid a reasonable fee *out of the fund*, and filed with said petition a certificate from two prominent members of the Bar that from their knowledge of the services rendered, $250 would be a reasonable fee, and thereupon the Court passed an order directing the allowance of such fee subject to the usual exceptions. An auditor's account was filed April 28th, 1906, designated Account No. 1, being an expense account, in which said fee was allowed, and showing a balance of $2,185.26 subject to the future order of the Court.

Exceptions were filed to the allowance of this fee by the Title Guarantee and Trust Company, and the Auditor's Account No. 1, was ratified, except as to that fee, May 12th, 1906.

When Clarence E. Jones and R. N. McCullough & Co. filed their lien claim May 3rd, 1906, they also filed a petition denying the validity of Barnes claim, alleging that they were the only mechanics' lienors against the said church, and praying to be made parties defendants in the cause, and it was so ordered by the Court. The exceptions of the Title Guarantee and Trust Company to the allowance of said fee alleged that Merryman's employment by Barnes was a personal contract, and that for his services he should be compensated by Barnes, or allowed a fee out of such part of the proceeds of sale as should be allowed said Barnes; and that in any event the fee allowed was unreasonable and excessive.

On May 28th the auditor stated Account No. 2, distribut-

ing the balance from Account No. 1, and awarding: 1st. To Clarence E. Jones the amount of his lien, $167.86.    2nd. To R. N. McCullough & Co. the amount of their lien, $458.89. 3rd. To Barnes the amount of his lien, $1,132.63, and 4th. To the Title Guarantee and Trust Co. the balance, $400.88, on account of its mortgage, leaving due and unpaid $1,921.12.

The Title Guarantee & Trust Co. on June 7th, 1906, excepted to the ratification of Account No. 2, first, because the lien of Barnes was invalid in law, aud of no force or effect; and second, for other reasons to be assigned at the hearing, and also filed the same exceptions to the claims of Clarence E. Jones and R. N. McCullough & Co.

On the same day, Burdette, assignee of Barnes, moved to dismiss these exceptions of the Title Guarantee and Trust Co. 1st, because the validity of Barnes claim had been finally adjudicated in the cause; and 2nd, because the exceptant was estopped from objecting thereto ; and on the following day, applied to have the cause placed on the Trial Calendar "for hearing on exceptions to auditors distribution account, in conformity with the first equity rule".    On June 11th, Clarence E. Jones and R. N. McCullough filed petitions praying that the exceptions to their claims be dismissed.    On the same day the Court passed three orders— one, "on hearing and consideration of the motion to dismiss the exceptions of the Title Guarantee & Trustee Co. to the claim of Clarence E. Jones" and one upon like consideration of the motion to dismiss the exceptions of the Title Guarantee & Trust Co. to the claim of R. N. McCullough & Co. and sustaining each of these motions and dismissing the exceptions.    The third order of June 11th, after hearing overruled the exceptions of the Title Guarantee and Trust Co. to Auditors Account No. 1, dismissed said exceptions and ratified said account; also granted the motion of Burdette, assignee of Barnes, to dismiss the Title Company's exceptions to Auditors Account No. 2, dismissed said exceptions and ratified said account.    And on the 15th of June, another order was passed ratifying Auditors Account No. 2, and directing the trustees to apply the proceeds accordingly.

From these orders the Title Guarantee and Trust Co. has appealed.

The first question raised is to the allowance of a fee of $250 to Joseph P. Merryman as counsel, for services rendered in filing the bill and conducting the proceedings to decree. The objection that the allowance is excessive will be first considered. No evidence was taken upon this subject, though there was ample opportunity to do so, if it had been desired. It rests upon the certificate of experienced counsel, of high standing, and upon the presumed discretion of the distinguished Judge who allowed it. Under these circumstances, whatever opinion we might entertain of the matter, we should not feel justified in disturbing the amount, unless the disproportion of the allowance to the services rendered, was so great as to indicate that the judge below failed to exercise a sound and reasonable discretion, and we cannot say that.

As to the other objection, it may be conceded that where a trustee is also an attorney, and renders legal services in connection with the trust estate, he will in a proper case, be entitled to be paid for his professional services out of the common fund, as though the two capacities were separate. *Millers Equity*, p. 664. But the primary question is whether the given case is a proper one for allowance out of the common fund. Without considering whether the bill in this case can be regarded as a creditor's suit in which a fund has been realized by the diligence of the plaintiff, and thus within the general rule in such cases authorizing payment of reasonable counsel fees out of the common fund, we are all of opinion that under the circumstances of this case it falls within an exception to the rule. This Court said in *B. & O. R. Co.* v. *Brown*, 79 Md. 447, "When compensation is allowed out of a common fund for expenses incurred and services rendered in behalf of the common interest, it is upon the principle of representation or agency ;" and in support of this statement, quoted from *Wilson* v. *Kelly*, 30 South Car. 483, "that one cannot legally claim compensation for voluntary services to another, however beneficial they may have been, nor for in-

cidental benefits and advantages to one flowing to him on account of services rendered to another by whom he may have been employed. Before legal charge can be sustained there must be a contract of employment, either expressly made, or superinduced by the law upon the facts ;" and because in the case of *B. & O. R. R.* v. *Brown, supra,* the position of the Railroad Co. representating the assigning members of the Old Relief Department was one of antagonism and hostility to that of the non assigning members, there was no community of interest between them, and it was held that the Railroad Company could not be forced to pay any part of its adversary's counsel fee by its allowance from the common fund.

The facts in the case before us make it clear that the claim and position of the appellant was antagonistic to that of Barnes. The appellant was not made a party to the cause in which the decree was obtained by pre-arrangement on the same day the bill was filed, and the appellant had no knowledge of the proceeding until nearly a month afterwards, when it promptly filed a petition asserting that its interests would not be protected unless a co-trustee was appointed for that purpose to act with Mr. Merryman, by whose subsequent consent, Mr. Fairbank was appointed to represent the appellant. In everything that was done subsequent to the filing of said petition the appellant was represented by Mr. Fairbank, so that we have the appellant promptly *repudiating* the agency of Mr. Merryman in filing the bill and procuring the decree, and *thereafter* being represented solely by Mr. Fairbank. In *B. & O. R. R.* v. *Brown, supra,* the Court distinguished very clearly from that case, the case of *Davis and Brydon* v. *Gemmell,* 73 Md. 530, relied on here by the counsel for Burdette, assignee of Barnes. In the latter case, Brydon was without means to carry on the suit, and employed his counsel to carry it on, upon a contingent fee. The record showed that Gemmell and Sinclair knew this, but they stood by without objection until the end of the costly and laborious litigation, and the Court then justly and properly refused to sustain their exceptions to the allowance of a counsel fee out of the common

fund, because, in the language of *Wilson* v. *Kelly* cited above, "a contract of employment was superinduced by the law upon the facts of the case".

The position of Clarence E. Jones and R. N. McCullough & Co., are for the same reasons, equally antagonistic to that of the appellant, but they have not appealed from the orders of the Court, their lien claims being allowed in full.

The two cases of *B. & O. R. Co.* v. *Brown*, and *Davis & Brydon* v. *Gemmell*, sufficiently state and illustrate the legal principles controlling this question, and without further discussion we are of opinion that Mr. Merryman must look alone to Barnes or Burdette for compensation for his services in this case.

It was argued by the counsel of the appellee, Burdette, with fullness and much ability, that the effect of the decree for sale passed upon the claim of Burdette, was to establish conclusively both the validity and amount of that claim, whilst the appellant's counsel earnestly contended that its effect was not to settle or adjudge the rights of any of the parties, but merely to convert the property into money, for distribution among the several claimants according to the further proof in the cause, and that the decree can only be sustained as passed under sec. 207 of Art. 16 of the Code, which provides "that in all cases where a suit is instituted for the sale of real or personal property, or where from the nature of the case, a sale is the proper mode of relief, the Court, in its discretion, may order a sale of the property before final decree, if satisfied clearly by proof that, at the final hearing of the case, a sale will be ordered, and order the money arising from such sale to be deposited or invested, to be disposed of as the Court shall direct by final decree." The appellant relies upon the case of *Kelly and Martin* v. *Gilbert*, 78 Md. 431, while the appellee invokes the doctrine of *Strike's case*, 1 Bland 68, and *Welch* v. *Stewart*, 2 Bland 38, to the effect that "on a creditor's bill, a decree for a sale in the usual general terms, virtually and necessarily establishes the original plaintiff's claim, where such claim has been proved or admitted, since no sale can be ordered,

but to pay some one or more debts which have been established to the satisfaction of the Chancellor''. An examination of the case of *Kelly and Martin, supra*, will show that the frame of the bill in that case was designed to bring it within the scope of sec. 207 of Art. 16 of the Code, and that the decree was distinctly based on that section.

But we do not deem it necessary to determine to what extent the decree in this case was an adjudication of the validity and amount of the plaintiff's claim, because we think, under the peculiar facts of this case, the appellant was estopped from excepting to the plaintiff's claim, and that the motion to dismiss the appellants exceptions was properly granted.

The record not only fails to show that the appellant in his petition of January 13th, 1906, attacked the validity or amount of the plaintiff's claim, but shows that it was never attacked at any stage of the proceedings, by the appellant, until its exceptions were filed June 7th, 1906, to Audit No. 2 filed May 28th, 1906. On the contrary, the record shows that the appellant in its original petition merely asked to be recognized, by *representation in the decree* already obtained by the plaintiff; that being so recognized, it co-operated with the plaintiff in the enforcement of the decree for sale based exclusively upon the plaintiff's claim ; that when Clarence E. Jones, and R. N. McCullough & Co. on May 3rd, 1906, filled their petition attacking the plaintiff's claim, and asking to be made parties defendants to the cause for the purpose of resisting that claim, the appellant not only continued to be silent, but, as asserted by plaintiff's counsel in his brief and oral argument, ''joined in active opposition to the motion of Clarence E. Jones to have the decree of sale and all other proceedings in the cause summarily dismissed as a collusive and conspiring scheme on the part of the parties thereto to defeat the claims of the creditors of said body corporate.'' The record is silent upon that point, but the appellant's counsel did not, either in his brief or oral argument, deny this assertion, and we may therefore accept it as true. After this course of conduct, it cannot be heard now to question the validity of the plaintiff's claim.

Clarence E. Jones and R. N. McCullough & Co. are not thus estopped however.    They denied the validity of plaintiff's claim when they first intervened by petition, and were made parties defendants on May 3rd, 1906, but they failed to take any subsequent steps to support their attack upon this claim.    It being admitted as correct by the answer of the Church, such admission, for the purposes of the decree, was equivalent at least to primary proof.  *Strike's case, supra*, p. 70.    Assuming, *ex gratia argumenti*, that this was only primary proof, they should have asked leave to take testimony, as they had ample opportunity to do, to sustain their attack upon plaintiff's claim, before audit was made.    Primary proof stands in the place of full proof until full proof is demanded. *Third Nat. Bank* v. *Lanahan*, 66 Md. 469.   When the Court in *Kelly & Martin* v. *Gilbert, supra*, p. 436, says that "the bill and answer of the owner, cannot *under such circumstances*, furnish such proof as the statute requires," it refers only to cases coming under sec. 207 of Art. 16.    And in *Jackson* v. *Wilson*, 76 Md. 573, *it was only where full proof was demanded of the petitioning creditors*, that their claims were held not to be fully merged in the decree.

Morever, apart from the ground just considered, the exceptions of the appellant were insufficient in form and substance, and were entitled to no consideration.   The first ground of exception was that "the said lien is invalid in law, and of no force and effect," and the second was "other reasons to be assigned at the hearing of these exceptions."

As early as *Scrivener* v. *Scrivener*, 1 H. & J. 748, CHANCELLOR HANSON says, "Every exception ought to point out a particular error, and general exceptions only transfer in effect the examination of the papers from the Auditor to the Chancellor," and this has ever since been consistently followed as the rule of practice.   *Calvert* v. *Carter*, 18 Md. 111, where the exception was, "For that the excepant is entitled to credits other than those given in said account."   *Grove* v. *Todd*, 45 Md. 256; *Young* v. *Omohundro*, 69 Md. 431, "For other and various reasons apparent on the face of said report,"

where the Court said, "It is just as necessary that specific exceptions should be filed to an auditor's report, as to the admissibility .of evidence or the competency of a witness.    It was clearly the intention of the Legislature to require an exact and definite statement of exceptions in the lower Court, so that neither party could be taken by suprise on appeal."

For the reasons we have given, the orders appealed from must be reversed, and the cause be remanded that a new account may be stated, disallowing any counsel fee to Mr. Merryman, and distributing the net proceeds of sale in accordance with the views herein expressed.

> *Orders reversed and cause remanded.*
> *Costs below to be allowed out of the fund.    Costs in this Court to be paid by the appellee, Burdette, assignee of Barnes.*