(Decided 19th June, 1890.)

THE BALTIMORE AND OHIO RAILROAD COMPANY and the BALTIMORE AND OHIO EMPLOYÉS' RELIEF ASSO-CIATION *vs.* THOMAS J. CANNON.

*Voluntary relief Association — Corporation — Dissolution—Receivers—Court of Equity.*

A voluntary relief association formed by the employés of the Baltimore and Ohio Railroad Company, was afterwards incorporated by the Act of 1882, ch. 358; the Act declaring the object of the association to be to extend relief in case of sickness, injury, old age, and death, to the employés of the Baltimore and Ohio Railroad Company and their families, to receive deposits on interest from said employés and their wives, and to loan them money at lawful rates of interest, and generally to promote their welfare. In accordance with a provision of the Act of incorporation, the railroad company adopted a resolution guaranteeing all the obligations of the association. In 1889, when the association had about twenty-one thousand members, the Legislature passed an Act repealing the charter of the Association, and providing that the Act should take effect on the 1st of April, 1889. A few days before the charter was to expire, the association transferred all the assets, credits, and securities of its relief feature to the railroad company, and the latter covenanted to hold and apply the same to the liabilities of the association in connection with the business of its relief feature, and thereafter for the benefit and advantage of the new association, which was to take the place of the old, and to pay to such of the members of the old association as should refuse to become members of

the new association, the value of their respective memberships and interests. The new association was formed, and comprised about ninety-five per cent. of the members of the old association. On a bill filed by a member of the old association who had refused to join the new, asking the appointment of receivers to take possession of all the assets of the former association, and wind up its affairs, it was HELD:

That inasmuch as the persons who had joined the new association, depended upon it for the continuance of their life assurance, and the payment of sick benefits, a Court of equity should not appoint receivers as prayed, as it would in effect destroy the new association, and was not necessary for the protection of the interests of the complainant, which were abundantly secured by the covenant of the railroad company,

In the settlement of the affairs of a corporation that has been dissolved, a minority of the stockholders are not always entitled to have receivers appointed and the assets sold, as there may be circumstances presented to a Court of equity that will justify a decree ascertaining the value of the assets in some fair and equitable manner without a sale, and making a distribution to shareholders on that basis.

APPEAL from the Circuit Court No. 2, of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Hugh L. Bond, Jr.,* and *John K. Cowen,* for the appellants.

*George R. Gaither, Jr.,* and *Arthur George Brown,* for the appellee.

FOWLER, J., delivered the opinion of the Court.

The sole question for our consideration in this case is, whether the prayer for the appointment of receivers,

contained in the bill filed by the appellee, should have been granted. The case was heard below on bill and answer, and the exhibits filed with them, and resulted in an order appointing receivers as prayed. From this crder this appeal has been taken.

The case is not altogether free from difficulty, and was argued with marked ability. The view we have taken, however, will render it unnecessary to consider some of the important and interesting questions discussed at the hearing.

In 1880 the employés of the railroad company formed a voluntary relief association, and in 1882 it was incorporated by an Act of the General Assembly of Maryland, (chap. 358,) which declares the objects of the association to be "to extend relief in cases of sickness, injury, old age, and death, to the employés of the Baltimore and Ohio Railroad Company and their families, to receive deposits on interest from said employés and their wives, and to loan them money at lawful rates of interest, in order to provide them with or to improve homesteads, and generally to promote their welfare." The charter provided that it should be a condition precedent to the making of any engagements by the association that the railroad company should guarantee the performance of the obligations of the association, and that it should make no contracts beyond such guarantee, nor after the repeal of the resolutions authorizing the same. In accordance with this provision of the charter the railroad company adopted a resolution, June 14th, 1882, guaranteeing all the obligations of the association. The relief association rapidly increased in membership, and continued to flourish until March, 1889, when it had about twenty-one thousand members.

But for reasons not disclosed by the record, the Legislature of Maryland, at its session of 1888, passed an Act (chapter 527) the first section of which repealed the

charter of the relief association, and the second section thereof provided that the Act should go into effect April 1st, 1889. Although some question was made below as to the validity of this Act, it seems to have been conceded in the argument here that it is constitutional, and that its effect was to dissolve the said association at the time therein named.

Consequently, the relief association having been deprived of its charter by the Legislature, the railroad company in March, 1889, just before the law repealing said charter took effect, rescinded its resolution of June 14th, 1882, by which it had guaranteed the performance of the engagements of said association, and ordered that the rescinding resolution should go into effect upon the expiration of the charter.

It being, then, evident to all persons interested therein that the relief association must cease to exist, and it being necessary to take care of the interests of the many thousands of its members who relied upon it as the sole source of insurance for their families in case of death, and there being also many members who were entitled to sick benefits, it can readily be seen that the members of such an association would not quietly witness its destruction, and that of their great interests therein without making an effort to continue its existence, and thus secure to themselves and families the advantages which they enjoyed by being members thereof. We find, therefore, that the committee of management of the relief association, aided by the railroad company, took steps to avert the injury which must follow the dissolution and winding up of the association in any other method than that afterwards provided for in the agreement between said association and the railroad company. Accordingly, on the 29th of March, a few days before the charter was to expire, the association agreed to transfer, and did actually transfer, all the assets, credits

and securities of its relief feature to the said railroad company, and the latter covenanted to hold and apply the same to the liabilities of said association in connection with the business of its relief feature, and thereafter for the benefit and advantage of the new association, which was to take the place of the old, and also, that in case any members of the said old association should refuse to become members of the new association, the value of their respective memberships and interests in the old association should be ascertained and paid to them in money. It would thus appear that the association and the railroad company made every reasonable effort to protect all classes of members, as well those who should desire to become members of the new association, as those who might wish to receive in money the value of their interests in the dissolved corporation at the time of its dissolution under the said Act of Assembly. The appellee belongs to the latter class, and his contention is that the agreement and transfer above referred to is void, and that of the appellant that it is valid and operates as a deed or declaration of trust. And the appellant so treats it in its answer, alleging, in effect, that it holds the assets of said association in trust for the payment of the appellee's claim, and of all other valid and just claims against said association. Not only so, but the said railroad company itself filed a bill against said association, and all the dissenting members thereof, for the purpose of obtaining the aid of a Court of equity in ascertaining and paying the value of the interest of each such member in money.

Now, under these circumstances, it is contended that it is the duty of a Court of equity, on the case made here on bill and answer, to appoint receivers to take possession of all the assets of the said relief association, wind up its affairs, and in effect, destroy the new asso-

ciation, which has been formed by ninety-five per cent. of the members of the old association.

When it is remembered that about twenty thousand men depend upon this new association for the continuance of life assurance which they have maintained for a number of years, and also for the payment of certain sums of money in case of sickness, it must be conceded that a Court of equity would hesitate to adopt a course which would destroy these great and valuable advantages, unless some controlling rule of law imperatively demands it. And especially is this so, when it is certain that a course so destructive to the interests of the many is not necessary to protect the interests of the few who do not wish to become members of the new association.

It was contended that if the said transfer is void, receivers must necessarily be appointed, but in this view we cannot concur; and without undertaking to pass upon the validity of the agreement between the relief association and the railroad company, and the transfer made in pursuance thereof, we have come to the conclusion that receivers should not be appointed. They are necessary in this case neither to protect nor ascertain the interests of the appellee. Certainly receivers could afford no additional protection to those asking their appointment, for it must be admitted that under the allegations of the answer, which, for the purposes of this case, are to be taken as true, the defendant company is amply able to secure the payment of any sum of money it may be required to pay to the appellee, and to all those in a similar position.

It was also contended that, in the settlement of the affairs of a dissolved corporation, it is the right of a minority of stockholders to have a decree for receivers and a sale of assets.

In the case of *Mason vs. Pewabic Mining Company,* 133 *U. S.,* 63, it was so held, yet the Court in that case is

Balto. & Ohio Railroad Co., *et al. vs.* Cannon.

careful at the same time to say, that they do not undertake to declare that there may not be circumstances presented to a Court of Chancery which is winding up a dissolved corporation and distributing its assets, that will justify a decree ascertaining their value in some fair and equitable manner without a sale, and making a distribution to shareholders on that basis.    And it was earnestly urged that equity should not be called on to enforce a void agreement; but, as we have already said, we are of opinion that the rights of all parties may be disposed of in a Court of equity without regard to the validity of the agreement and transfer.    Whether void or not, they have been so far executed, that it would be impossible to place the parties in *statu quo.*    If a mistake was made by the association and the railroad company in the method adopted to wind up the former, and if, as we have seen, twenty thousand of the twenty-one thousand members of the dissolved corporation ratified and confirmed the supposed error because it was clearly to their benefit to do so, and if, as is the case here, the assignee of the assets of the dissolved corporation, is already in a Court of equity, admitting its entire responsibility to account for the same, as the Court shall order, and has shown that it is ready and able to give ample security for the payment of any sum of money the appellee may be entitled to, we see no reason why, as the case now stands, the defendant should not be allowed and required, as trustee, to settle with the appellee and those in like position with him, in such manner as the Court shall direct.    In the case already referred to (the *Pewabic Mining Co.*) Justice BRADLEY says : "I think the opinion of the Court asserts too strongly the right of the minority to insist upon a sale.    In many cases in this country a valuation of the interests of a minority, *under the direction of the Court,* has been deemed a proper method of ascertaining the share in the assets where a sale would be prejudicial to the interests of the whole."

Nor does it necessarily follow that if the instrument under which the assignee of the assets holds is void the Court will appoint an officer to take possession.

Judge STORY says: "Another instance, perhaps more comprehensive in its reach, in which Courts of equity act by creating trusts *in invitum*, is where a party purchases trust property, knowing it to be such, from the trustee, in violation of the objects of the trust. In such a case a Court of equity forces the trust upon the conscience of the guilty party, and compels him to perform it, and holds the property subject to it in the same manner as the trustee himself held." 2 *Story's Equity Jurisprudence*, 606, and authorities there cited. It is not necessary here, however, to appeal to this doctrine, for the defendant itself fully admits the existence of the trust, shows its readiness and ability to perform it more effectively and more economically than could be done by receivers.

In the leading case of *Blondheim vs. Moore*, 11 *Md.*, 374, this Court, Judge LE GRAND, delivering the opinion, lays down very clearly the general rules by which chancery should be governed in appointing receivers. It is there said that the power of appointing receivers is a delicate one, and to be exercised with great circumspection; that it must appear not only that the claimant has title to the property, but the Court must be satisfied that a receiver is necessary to preserve it, and that fraud or imminent danger, if the intermediate possession should not be taken by the Court, *must be clearly proved.*

The application of these rules, which have been so frequently approved, to the facts before us, satisfies us that the prayer of the bill for receivers should have been refused.

*Order reversed and cause remanded;*
*costs to be paid out of the fund in controversy.*

(Decided 19th June, 1890.)