# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 28, 1896.

BALTIMORE & OHIO EMPLOYES' RELIEF ASS'N.—CONSOLIDATED CASES.

IN THE MATTER OF THE PETITION OF JOHN FLAHERTY.

*Sams & Johnson* and *Geo. R. Gaither, Jr.*, for petitioner.

*Hugh L. Bond, Jr.*, and *Geo. Dobbin Penniman* for respondent.

HARLAN, C. J.—

The Baltimore and Ohio Employes' Relief Association was organized by the Baltimore and Ohio Railroad Company on May 1st, 1880. In 1882 it was incorporated. In 1888 the Legislature

repealed its charter by an act which took effect on April 1st, 1889. Two days prior to this, viz., March 29, 1889, the railroad company and the relief association entered into the following agreement:

"THIS AGREEMENT, made this twenty-ninth day of March, in the year eighteen hundred and eighty-nine, between the Baltimore and Ohio Employes' Relief Association, hereinafter called the association, party of the first part, and the Baltimore and Ohio Railroad Company, hereinafter called the company, party of the second part.

WHEREAS, the Legislature of Maryland, at its last session, repealed the charter of the association by an act to take effect on the first day of April, 1889; and

WHEREAS, the company is the guarantor of all the obligations of the association with reference to or in connection with the business of its savings fund and building feature, and is also the guarantor of the benefits promised in the constitution of the association to the members of the relief feature thereof, and is the contributor of the entire fund applied annually to the purposes of the pension feature of the association; and

WHEREAS, the company has established the relief department under regulations issued by the president by his circular dated March 15, 1889, which department, through its relief, savings and pension features, is intended and fitted to carry out the purposes and continue the business of the relief, savings fund and building and pension features respectively of the Association; and

WHEREAS, said regulations of the relief department of the Company provide for the admission to membership in the relief feature thereof of the members of the relief feature of the Association, conditioned on the transfer of the assets hereinafter provided, and for the contribution by the company to the pension feature of said department of the same annual sums of money which it has heretofore contributed to the pension feature of the Association; and

WHEREAS, it is desired to wind up the business of the several features of the Association on the thirty-first instant, and to afford opportunity to the members of the relief feature, depositors in the savings fund and pensioners of this Association to retain and continue the privileges and advantages afforded them respectively in the association, by becoming members of the relief feature, depositors in the savings feature and pensioners respectively in the said relief department.

Now THIS AGREEMENT WITNESSETH, that in consideration of the premises and agreements on the part of the company herein contained, the Association hereby upon its part covenants and agrees that it will convey, transfer, assign and set over to any company or any person or body corporate that the latter may designate, all the property, assets, credits and securities now held or hereafter acquired by the Association for or in connection with the business of its relief feature; and also all the property, assets, credits and securities now held or hereafter acquired by the Association for or in connection with the pension feature; and also all property, assets, credits and securities now held or hereafter acquired by the Association in connection with the business of its savings fund and building feature, or for account of its depositors therein.

And the said company on its part covenants and agrees that the property, assets, credits and securities of the relief feature so to be conveyed, shall and will be held and applied to the payment of the liabilities of the Association in connection with the business of its relief feature, and thereafter for the benefit and advantage of the members of the relief feature of said relief department; and that the said property, assets, credits and securities of the pension feature so to be conveyed and transferred, shall and will be held and applied to the payment of the liabilities of the association in connection with the business of its pension feature and thereafter for the benefit of the pensioners of the pension feature of said department; and that said property, as assets, credits and securities of the savings fund and building feature so to be conveyed and transferred, shall be held and applied to the payment of the liabilities of the association in connection with the business of its said feature and thereafter for the benefit of the depositors therein.

And the said company on its part further covenants and agrees that in case of any member of the relief feature of said association shall refuse to become a member of the like feature of the relief department, the value of his membership and interest in said association shall be ascertained by some competent actuary and the amount so ascertained as the value thereof shall be paid in money to said member; and also further covenants and agrees, in consideration of the conveyance aforesaid, that the monthly allowance of each pensioner on the pension list of the association on the thirty-first day of March, instant, shall be continued to him as theretofore paid by the association.

And the company further covenants and agrees that all the property, assets, credits and securities, the conveyance and transfer of which is provided for in this agreement, shall be kept and remain distinct and separate from the property of the company held for its railroad purposes.

IN WITNESS WHEREOF, these parties hereto have hereunto caused their corporate names to be hereunto subscribed by their respective officers duly authorized, and their respective corporate seal to be hereto affixed and attested, all on the day and year first above written."

In pursuance of this agreement the Association turned over to the Railroad all of the assets of its relief and pension features.

At this time the members of the Association numbered 20,365 and 19,200 of them availed of the privilege secured by the agreement to become members of the Relief Department and executed assignments of their interest in the assets of the Association to the Railroad Company, in trust for the new Relief Department organized by it. Each of these instruments containing an agreement on the part of said members "to be bound by all the regulations of the Relief Department now in force, and by any other regulations of said Department hereafter adopted," and the following clause: "In consideration of the right and privilege accorded by the Company to me as a member of the Baltimore and Ohio Employes' Relief Association, of becoming a member of the Relief Feature of the Relief Department in the class and with the benefits aforesaid, without compliance by me with the requirements and conditions governing the admission of persons not members of said Association, and in consideration also of the benefits accruing and to accrue to me as a member of said Relief Feature, I do hereby grant, assign and set over to said company all my right, title and interest in and claim to the property and assets now held or hereafter acquired by said Association for or in connection with its relief and pension features, together with all my rights and claims of every kind as a member of said Association, hereby assenting to and confirming the transfer of said property and assets by said Association to the Company, *for the purposes of the like features of the relief department respectively.*"

It is perfectly manifest from the terms of this agreement and these assignments that the Baltimore and Ohio Railroad Company was to have no beneficial interest in the funds and property so transferred and assigned to it, but that the same were to be held and applied by the Railroad Company:—1st, to the payment of the obligations of the dissolved Association, in connection with its relief, savings and pension features, and *thereafter* for the benefit and advantage of the members of the like features of the new Relief Department.

2nd. And in the event of any member of the old Association refusing to become a member of the new Relief Department, the value of his interest in the old Association was to be ascertained and paid in money.

In other words, a trust was created for these express purposes, and in order to remove the matter from any doubt, the trustees expressly covenanted and agreed "that all the property, assets, credits and securities, the conveyance and transfer of which is provided for in this agreement, *shall be kept and remain distinct and separate from the property of the Company held for its railroad purposes.*"

Eleven hundred and sixty-five of the members of the Association did not make any assignment of their interests, and did not join the new Relief Department, and so became entitled to the surrender value of their interests in the Association. Shortly after the 31st of March, 1889, a bill in equity

586

was filed in this Court by Isaac S. Conley, and soon another by Thomas J. Cannon, two of the non-assigning members, against the Baltimore and Ohio Railroad Company and the Baltimore and Ohio Employes' Relief Association, alleging that the assignment of March 29th, 1889, between the Railroad Company and the Relief Association, was *ultra vires* and void, and praying that receivers might be appointed to have charge and distribute the assets of the dissolved corporation. About a month after the filing of this second bill the Baltimore and Ohio Railroad Company filed a bill of complaint also in this Court making the Relief Association and each and all of the eleven hundred and sixty-five non-assigning members defendants, wherein, after reciting the facts relating to the dissolution of the Relief Association and the agreement of March 29th, 1889, between the Railroad Company and the Relief Association, and the further fact that all of the 20,626 members of the Relief Association, except the defendants had become members of the new Relief Department, it is declared: "That by virtue of said contract, as well as by virtue of their membership in said Relief Association, the said defendants are entitled to receive out of the funds held by your orator as aforesaid, each a certain sum of money; that by virtue of said contract *your orator became trustee of the said funds and assets of the Relief Association to apply the same to the purposes and in the manner set out in said agreement.*" And the Court is asked to assume jurisdiction of the trust and advise and direct the further administration of the same. The *whole trust* created by the agreement of March 29, 1889, was brought before the Court, although it is quite manifest that the occasion for doing so was the fact that some of the members of the old Association had refused to become members of the new Relief Department, and it was necessary to have the aid of the Court in ascertaining their interests. Upon the bill and answer in the Cannon case receivers were appointed, but upon appeal, the Court of Appeals reversed that order and remanded the cause (72 Md. 493). The Cannon case, the Conley case, and the case in which the Baltimore and Ohio Railroad Company had asked the Court to assume jurisdiction of the trust was then by order of Court of November, 1890, consolidated, counsel was appointed to represent the non-assigning members, and a protracted litigation followed, the object of which was,

I. To determine *what was the true amount of the assets* of the Relief Association for which the Baltimore and Ohio Railroad Company should account, and

II. How the assets were to be distributed among the members.

At the time the Railroad Company asked the Court to assume jurisdiction of the trust, the assets of the Relief Feature amounted, by its admission, only in round numbers to $184,000. The result of the litigation was to hold it responsible for the sum, in round numbers of $523,000, being, in round numbers, $339,000, more than it admitted to be due.

The decree of the Court prescribing the terms of the accounting, gives the following direction, among others, to the Special Auditors:

"Eighth: They shall audit the amount due all the members when ascertained as above directed, who have assigned their interest in said Association to the Baltimore and Ohio Railroad Company, upon proof of said assignment to said Railroad Company, in one sum to be held by it *for the benefit* of the members of the relief feature of the relief department of said Company."

The Special Auditor's final report and distribution accounts filed August 20th, 1895, audit "to the Baltimore and Ohio Railroad Company *in trust for the benefit of the Relief Department of the Baltimore and Ohio Railroad Company,* the sum of $548.399.04." This account was finally ratified and confirmed on September 14th, 1895.

On November 30th, 1895, the following entry was made upon the books of the Baltimore and Ohio Railroad Company:

"1895, Nov. 30. By amount ascertained to be due as of February 1, 1895, by the B. & O. Railroad Company to Baltimore and Ohio Employes' Relief Department, as per Auditor's Report to the Circuit Court No. 2 of Baltimore City, same

being ratified and confirmed .September 20, 1893, and February 12, 1895:—

Face of claim.........$254,965.75
Interest ............... 103,788.25

Amount due February 1, 1895, as per decree.$358,754.00
Interest on same from February 1, 1895, to June 30, 1895, 5 months at 4 per cent. per annum, in accordance with agreement between B. & O. and Relief Department... 5,912.56
————————$364,666.56"

If to this be added the securities belonging to the trust fund as per Expense Account B, value at ........................... 158,126.00

The total is.................$522,792.56 which sum of $522,792.56 is apparently less than $548,399.04, the sum with which the Baltimore and Ohio Railroad is chargeable, by $25,506.48. As to this discrepancy, it is proper to say, an offer to rectify the error, if there be one, and give a proper credit, has been made by counsel for the Railroad Company.

The proof in this case shows that at the time this entry or credit in favor of the Relief Department was made on the books of the Railroad Company, the accounts of the Railroad Company were overdrawn in bank, and it had not in the hands of its treasurer any such sum, or, indeed, any sum applicable to the payment of this credit, or that could have been invested for the benefit of the Relief department. On February 29th, 1896, the Baltimore and Ohio Railroad Company went into the hands of receivers appointed by the Circuit Court of the United States for the District of Maryland, on a bill filed by the Mercantile Trust Company, charging insolvency, and an answer of the Baltimore and Ohio Railroad Company admitting the allegations of the bill.

On the 9th of March, 1896, this Court passed an order, on the petition of John Flaherty, a member of the relief feature of the Relief Department of the Baltimore and Ohio Railroad Company, and a former member of the Relief Association, suing on his own behalf and on behalf of all others interested in preserving the fund, and charging a breach of trust by the Baltimore and Ohio Railroad Company, which order required the Baltimore and Ohio Railroad Company to show cause on or before the 23rd day of March, 1896, why it should not be required to pay into Court all moneys held by it as trustee for the Relief Department and audited to it in trust therefor in this cause, and why a new trustee should not be appointed. An answer was filed and testimony taken, and the cause fully and ably argued. The breach of trust alleged consists in:

1. Gross negligence in not complying with the Court's order as to the entries on the trustees' books.

2. In having turned over the trust fund, if it exists, to another party, the receivers of the railroad, and carried it into another jurisdiction, the United States Court.

3. In having mingled the fund with the assets of the Railroad Company.

4. In not having invested the cash of the trust fund.

5. In having spent the cash of the trust fund.

Unless the credit entered on the books under date of November 30, 1896, or something done since that time can be regarded as a fulfilment of the trust, to apply the funds received from the Relief Association, under the agreement and assignment so often referred to, to the benefit of the members of the relief feature of the Relief Department, or unless the Railroad Company can show that it has the trust funds in its hands intact, there has been a failure to fulfill the trust such as requires action to be taken by the Court that will protect the cestui qui trust as far as that may now be possible. It cannot be seriously intended that an entry of that kind upon its own books by an insolvent corporation can be regarded as a fulfillment of a trust to apply the funds to the benefit of the Relief Department. Such entry can certainly be regarded only as an admission of its liability, not in any way as a discharge of its obligation. But the learned counsel for the trustee, referring to the agreement in the assignments executed by the assigning members of the old Association "to be bound by all the Regulations of the Relief Department now in force. or any other Regulations of said Relief Department hereafter adopted," and pointing to Sec. 9 of the Regulations established for the Relief Department, which reads as follows:

"All moneys and securities of the department, with "the exception of the mortgages made to secure loans from "the Savings Feature, shall be entrusted to the official custody of the treasurer of the company, to be held subject to proper requisitions, all such securities will be held in the name of the company, in trust for the Relief Department. Interest at the rate of four per cent. per annum will be paid on the monthly balances of cash deposited with the treasurer for the several features of this department, including in such balances the amount of checks not presented for payment or unclaimed on the last day of the month," contend; that inasmuch as the Treasurer of the Railroad Company was under these regulations to be the custodian of the funds of the Relief Department, the credit given to the Relief Department upon its books, whereby it became subject to check by the Relief Department for that amount, was as full payment as could be made.

That the funds became thereafter what they were intended by the assigning members to be, a part of the funds of the Relief Department, subject to all the regulations of the Relief Department by which said members had agreed to be bound, and that the duty of the Railroad Company as trustee ceased at this point, and the trust, the administration of which this Court was supervising, was fulfilled, and thereafter the Committee of Management of the Relief Department became responsible for the disposition of the funds. If not invested, this was, if a fault at all, the fault of the committee of management, and not of the railroad company. Reference is particularly made in this connection to Regulation 5, "The committee shall have charge of the operations of the Department * * * They will also determine what disposition shall be made of the surplus funds of the Relief Feature at the close of each fiscal year * * * They will direct all the investments for the several Features of the Department," and it is suggested that even as against the committee of management there can be no ground of complaint for not having invested this large fund, at the time of the receivership, because the close of next fiscal year after November 30, '95, the date of the entry, was not until June 30, '96, and the receiver-

ship was February 29, '96. That it was at least within the power of the committee to leave this money in the hands of the treasurer of the railroad company, bearing interest at the rate of 4 per cent., under Regulation 9, and that the railroad company if bound to pay 4 per cent. interest had necessarily the power to use this fund in its railway business. The deduction, of course, is, that if the fund has been so used and lost, that such loss cannot be regarded as a breach of trust on the part of the railway, the trust having ceased, or mismanagement on the part of the committee, such as to require the interposition of this Court, even if it has still jurisdiction. Now, when we come to examine this argument, there are several things to be noted. In the first place, who compose the committee of management upon whom it is alleged responsibility rested after . the credit had been given to the Relief Department upon the books of the Railway Company? Was it a Committee of the members of the Relief Department? No. The Committee means "the Committee of the President and Directors of the Bailtimore and Ohio Railroad Company in the Relief Department." While this "Committee have charge of the operations of the Department" and may "make any changes in these regulations which they may deem necessary." "New regulations will be operative *only when approved by the President and Directors of the Company.*" To whom does the Committee report? "Annually to the President and Directors." Is it possible that the Railroad Company can shield itself from responsibility in this case behind this creature of its own? Is not the action of this Committee, or the want of action, to be treated as the action or want of action of the Railway Company? If it is suggested that the rights claimed by the Railroad Company as to this fund were given by the contract between the Railroad Company and the members of the old Association who assigned to it and became members of the new Relief Department, is not the answer plain, that at the time these assignments were made by the Railroad Company had under the agreement of March 29th, became *trustee* of the funds for all members of the Relief Association, and that under the familiar doctrine applicable to trustee

and cestui qui trust, the trustee cannot rely upon any agreement as against the cestui qui trust by which he obtains any undue advantage. The right here claimed to be conferred by the Regulations is in effect the right of the trustee to borrow the trust funds without security at a time when it is trembling upon the brink of bankruptcy. A trustee's duty "requires of him the exercise of high diligence and absolute good faith" (per McSherry, J., in Zimmerman vs. Fraley, 70 Md. 568). The qualities could hardly be predicated of a trustee taking advantage of such an agreement under such circumstances even if it existed.

The argument of the learned counsel for the Railway Company also leaves out of consideration entirely that clause of the agreement of March 29th by which the Railroad Company covenants and agrees "that all the property, assets, credits and securities, the conveyance and transfer of which is provided for in this agreement, *shall be kept and remain* distinct and separate from the property of the Company held for its railroad purposes."

In my opinion, Regulation 9 (which was one of the regulations under which the Company had established the Relief Department, and was issued by the President in his circular dated March 15, 1889), cannot be given a construction which will absolute nullify and render nugatory the above solemn covenant and agreement of the Railroad Company made on March 29, 1889. This was an obligation assumed by the trustee—one which it was bound to keep, one which it could not permit the Committee of Management to violate, and if the trust funds have been lost in consequence of having been used in the railroad business, this is such a breach of trust as requires the Court's interposition.

Again, it does not seem to me that the entry of November, 1896, can in this case be given the effect of payment to the Relief Department, or as placing the trust funds at the disposal of the Committee of Management thereafter, even if the latter could be considered a fulfillment of the trust. To have any such effect it would at least have to appear that either at that date, or subsequently, there were funds in the hands of the treasurer that could have answered the requisitions of the committee of management, had such

requisitions been made. The proof in this case shows that at the date of this entry the treasurer's accounts were overdrawn, and there is no evidence to show that the insolvency subsequently confessed in February had not long continued.

So far as concerns the contention of the railroad company that the trust created by the agreement of March 29, 1889, was a trust simply for winding up the affairs of the Relief Association, it seems clear from the express terms and declarations of this agreement that a trust for the benefit of the Relief Department was also intended. The conveyance is to be made to the railroad company or "some other corporation to be named by it." It was conceded at the argument that, in fact, another corporation was named for the assets of the Saving Fund feature, and that corporation still continues to act as trustee. The same provisions as to the trust were inserted for all the respective features of the Association, and if a continuing trust was intended for the Savings Fund, it is manifest that a similar trust continues for the Relief Feature. And whatever trust was created was brought before the Court by the railroad company, to be administered under the Court's supervision. Without further discussion, I am of the opinion that enough appears in this case to at least require that the Court should pass an order directing that the trustee bring into Court the sum which under the auditor's reports heretofore stated in this cause, it was directed to hold in trust for the benefit of Relief Department of the Baltimore and Ohio Railroad Company, or the securities in which the same have been invested, to be deposited to the credit of this cause.

The attention of the Court has been called to the fourth section of the order of the United States Circuit Court for the District of Maryland, appointing Mr. Cowen and Mr. Murray, receivers of the Baltimore and Ohio Railroad Company.

The fourth section is as follows:

"That the said Receivers be fully authorized and instructed to continue the operation as heretofore, of the several features of the Relief Department of said defendant in accordance with the regulations adopted by the President and Directors of said defendant for the government of the same, to con-

tinue to collect and receive, and to distribute the funds of said department in its several features, as provided by said regulations, and generally to fulfill and discharge all the duties and obligations of said defendant in connection with said Relief Department."

If the Baltimore and Ohio Railway Company had in its hands trust funds under the supervision of this Court, it would seem plain that the Receivers of the Baltimore and Ohio had no right to the possession of such funds, and that the same should not have been delivered to them, and it is not to be believed that if such funds could be traced, upon proper application by the Baltimore and Ohio Railway, or by a new trustee to be appointed, if necessary, in its place, the United States Court would not recognize the demand. Indeed, if the direction to the receivers in the decree, "to fulfill and discharge all the obligations of the defendant (the Baltimore and Ohio Railroad Company) in connection with said relief department" is to be given its natural meaning, there would seem to be no difficulty in the Baltimore and Ohio Railway Company being able through the receivers to comply with an order to bring the money into Court.

If brought in, in this way, it would then be for the Court to determine how far the recommendations of the Committee of Management as to the investment or application of the fund should not be regarded and approved. To require such investment to be made under the Court's sanction, until it shall be apparent that some other application of the fund for the benefit of the relief department is proper, cannot result in an injury to the affairs of the department or its members.

As to the right of the petitioner, John Flaherty, to institute the proceedings in this suit, if I am right in holding that a trust was created for the benefit of the members of the Relief Department by the agreement of March 29, and the assignments thereunder, that this trust is being administered under the jurisdiction of this Court, that the entry of November 30, 1895, did not end it, that it therefore still continues and is unfulfilled, there can, I think, be no doubt that the Court will take action as against the trustees looking to the security, protection or recovery of the trust funds on the ap-

plication of any person beneficially interested therein.

"It is a peculiar province of a Court of Equity to enforce the performance of a trust where applied to for that purpose by any person interested." Callis vs. Ridout, 7 G. & J. 6. "Where a trustee violates his duty, any of the parties interested may call him to account in a Court of Equity." 3 Brev. (S. Car.) 47.

"An action for an accounting or a settlement is properly brought by any beneficiary in interest, and such beneficiary may sue in his own behalf or in behalf of all the *cestuis qui trustent.* It is not necessary that all the *cestuis que trustent* join in the suit where their number is so great that it would be impracticable for all to appear. A few may sue for all. * * * Any substantial beneficial interest will entitle the possessor to sue in his own name to compel the administration of the trust." 27 Am. & Eng. Enc. of Law, pp. 284-5. See also Lewin on Trusts, Marg., p. 976, Ch. xxxii, s. 3.

I will sign an order in accordance with this opinion.