# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* JOHN FLAHERTY.

*Relief Association—Dissolution—Parties— Receivers—Jurisdiction.*

An incorporated Railroad Relief Association, shortly before the repeal of its charter, assigned to the Railroad Company all of its assets, to be administered by it for similar purposes. The Association had more than 20,000 members, and all of them, except about 1,000, assigned their interest to the Railroad Company. Under a bill in equity, to which the Association and Railroad Company and the non-assigning members were parties, orders were passed by which the surrender value of the interests of the non-assigning members were ascertained and paid to them and the balance of the fund paid over to the Railroad Company, which conducted a relief department. The Railroad Company was some years afterwards placed in the hands of receivers, by an order of the Circuit Court of the United States. A party, who was a member of the relief department of the Railroad Company, filed a petition in said equity case, asking that the Railroad Company be ordered to pay into Court the amount audited to it for the relief department. *Held,*

1. That the Court had never assumed jurisdiction over the administration of the whole fund of the Relief Association, but only over that portion of it which belonged to the non-assigning members and that consequently petitioner was not entitled to obtain the relief asked for by means of a petition filed in the above-mentioned case.

2. That since the Railroad Company had been placed in the hands of receivers by a Federal Court, and that Court had ordered the receivers to continue the operations of the relief department as before, the · petitioner must ask relief against the Railroad Company in that tribunal.

Appeal from an order of the Circuit Court No. 2, of Baltimore City (HARLAN, C. J.) The Baltimore and Ohio Employees' Relief Association was incorporated in 1882. This charter was repealed by an Act of the Legislature, which took effect on April 1st, 1889. On March 29th, 1889, an agreement under seal was made between the Relief Association and the Baltimore and Ohio Railroad Company, by which the former transferred to the latter all of its assets, and the Railroad Company agreed to hold and apply

the same for the purpose of the relief, pension and savings
bank features of the association.   It was also agreed that
if any members of the association should refuse to become
members of the relief department of the Railroad Company,
then the value of his interest in the assets should be ascer-
tained and paid to him.   The Railroad Company covenanted
to keep separate the assets of the Relief Association so
transferred to it.   All the members of the association trans-
ferred their interests in the fund to the Railroad Company,
except 1,165.   Soon afterwards a bill in equity was filed in
the Court below by one Conley, and another bill by one Can-
non, two of the non-assigning members, against the Balti-
more and Ohio Railroad Company, and the Baltimore and
Ohio Employees' Relief Association, alleging that the
assignment from the latter to the former was *ultra vires* and
void, and praying that receivers might be appointed to take
charge and distribute the assets of the relief corporation.
After the filing of these bills, the Baltimore and Ohio Rail-
road Co. filed a bill in the same Court, making the Relief
Association and all of the 1,165 non-assigning members
defendants.   This bill alleged that said defendants, by vir-
tue of their membership in the association, were each
entitled to receive a certain sum of money out of the funds
held by the Railroad Company, under the assignment, and
that the Railroad Company could not safely make payment
to the defendants, and could not administer the trust fund
without the aid of that Court.   The prayer of the bill was
that the Court should take jurisdiction in the premises,
should advise and protect the company in the further admin-
istration of the trust, and that each of the individual defen-
dants should be enjoined from prosecuting any suit at law
against the company, in the premises.   Upon the bill and
answer, in the *Cannon case,* receivers were appointed, but
upon appeal the Court of Appeals reversed that order and
remanded the case.   (72 Md. 493).   The *Cannon case* and
the *Conley case* and the case in which the Railroad Com-
pany had filed a bill, were then consolidated in November,

1890, and a protracted litigation followed.  Afterwards, the
surrender value of their interests in the assets were audited
and paid to the non-assigning members and the balance of
the funds of the association, amounting to over $548,000,
was audited to the Railroad Company in trust for the relief
department.  By an order of the Circuit Court of the
United States, passed on February 29th, 1896, receivers
were appointed to take charge of the property of the Rail-
road Company.  Two days prior thereto the appellee,
Flaherty, a member of the relief department of the Rail-
road Company, filed a petition in the consolidated cases
above referred to, praying to be made a party, and asking
that the Railroad Company be made to show cause why it
should not be required to pay into Court the fund distributed
to it for the relief department.  After testimony was taken,
the lower Court passed an order on December 29th, 1896,
directing the Railroad Company, trustee, to pay into Court
the sum of $390,273.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, ROBERTS, BOYD and RUSSUM, JJ. (March
30, 1897).

*Hugh L. Bond, Jr.,* and *George D. Penniman* for the ap-
pellant.

*George R. Gaither, Jr.,* and *J. Hemsley Johnson* (with
whom was *Conway W. Sams* on the brief), for the appellee.

PER CURIAM.  A majority of the Judges who heard the
argument of this case are of opinion that the order appealed
against should be reversed, and that the petition of the ap-
pellee should be dismissed.  We are of that opinion for two
reasons : First.  Because the Circuit Court of Baltimore City
did not heretofore assume jurisdiction and control over the
whole fund mentioned in the proceedings, but only over that
portion thereof which belonged to the non-assigning mem-
bers of the extinct Relief Association ; the other part of the

fund, assigned to the Railroad Company, and held by it in trust for the relief department, having been alluded to in the consolidated cases merely for the purpose of ascertaining the amount or proportion of the entire fund distributable to the non-assigning members. And, secondly, because the assets of the Baltimore and Ohio Railroad Company having gone into the hands of receivers appointed by the United States Court, the petitioner, if he has any standing whatever to claim the relief prayed for, must seek that relief in the tribunal that now has jurisdiction over the assets of the Railroad Company, and, of course, therefore, over the funds held or due by the company, as trustee, to its relief department. An opinion giving at length our reasons in support of these conclusions will be filed hereafter. (June 24, 1897).

ROBERTS, J., delivered the opinion of the Court.

From the views which we entertain of the various questions arising on this appeal and the conclusions to which we have arrived and heretofore indicated in the *per curiam* opinion filed, it will not be necessary for us to do more than state briefly the reasons which have controlled us in arriving at the result announced. This Court has heretofore on three different occasions been called upon to consider and pass upon the conflicting interests and views of the members of the Relief Association and the appellant company. The cases will be found reported in 72 Md. 493 ; 77 Md. 566, and 79 Md. 442. This appeal is taken from an order of the Court entered on an intervening petition of the appellee filed in the consolidated cases, directing the appellant company as trustee to pay into Court on or before the 29th of January, 1897, to be deposited to the credit of the case, the sum of $390,273.04, subject to the further order of the Court, &c. The primary question which this appeal presents is, did the lower Court under the facts and pleadings in this case have the jurisdiction requisite to make the order appealed from ? We have already said that it did not. Without going into a detailed statement of the various

questions which have occupied the attention of this Court
in the cases heretofore referred to, we think the Court be-
low erred in assuming that it possessed jurisdiction of the
case made by the appellee's petition by virtue and in con-
sequence of the action and course of conduct of the appel-
lant company, in the cases passed upon by this Court.    To
understand the question brought before us on this appeal,
it will be necessary for us to make reference to some of the
facts contained in the reported cases relating to this con-
troversy.    In 1888 the charter of the association was re-
pealed.    Just prior to this Act going into effect nineteen
thousand and two hundred of the twenty thousand three
hundred and sixty-five members of the association, in con-
sideration of certain covenants made on the part of the
Railroad Company, assigned in due form to the Baltimore
and Ohio Railroad Company, in trust for the new relief
department organized by it, all their interest in the funds of
the Employees' Relief Association.    The obligations un-
dertaken by the Railroad Company are set forth in its
agreement with the Relief Association, dated March the
twenty-ninth, 1889 ; and amongst other things it expressly
stipulated that if any member should refuse to join the new
relief department, the value of his membership and interest
in the old association should be ascertained by a competent
actuary, and paid in money.    Eleven hundred and sixty-
five of the members did not make any assignment of their
interests, and did not join the new relief department, and
so became entitled to the surrender value of their interests
in the old association.    79 Md. 444-5.    Referring to this
bill the Court below has said, " The *whole trust* created by
the agreement of March 29, 1889, was brought before the
Court, although it is quite manifest that the occasion for
doing so was the fact that some of the members of the old
association had refused to become members of the new re-
lief department, and it was necessary to have the aid of the
Court in ascertaining their interests."    In the whole trust
is included the obligations of the Railroad Company to the

19,200 members of the old association who had assigned their interests to the appellant company and become members of the department, and the company's obligations to the relief department as an unincorporated association, as well as the obligations of the company to the 1,165 members who did not assign and who were named as defendants in the bill. We think it quite clear, from the language of the 6th section of the bill referred to, what the obligations were in the discharge of which the company sought the Court's aid, and that they were its obligations to the *dissenting* members, and those only. The jurisdiction of the Court extends only to the rights of the parties before it, and no use of language in the bill can extend the jurisdiction to the relations between the plaintiff and parties not brought into Court under the bill, even though such parties be named as defendants. Here, no defendants are named except the 1,165 non-assigning members, and no process of any kind was ever prayed or issued against the assigning members of the relief department. This Court has said in *Oliver* v. *Palmer*, 11 G. & J., 448–9, that, " It is a fundamental rule of equitable jurisprudence, to the universality of which the case before us forms not one of the exceptions, that where a bill is filed to affect a fund in which different persons have an interest, all the persons interested therein must be made parties, *ut finis sit litium*, that a multiplicity of actions may be avoided." *Grier, Mills & Co.* v. *Stoller*, 77 Fed. Rep. 1; *Scott* v. *McNeal*, 154 U. S. 34, 46 ; *Reynolds* v. *Stockton*, 140 U. S. 254.

The appellant contends that the rights and obligations which existed between the appellant company and the 1,165 defendants, whose rights were passed upon in 77 Md. 566, were not created or determined by the agreement of March 29th, 1889, and had nothing to do with the regulations of the relief department. These rights and obligations arose as between the appellant company and said defendants by reason of the fact that the former had come into possession of the assets of the old association, in which the defend-

ants as members of the association had each an equitable interest.    It mattered not whether the company's possession was lawful or unlawful, the simple fact of possession charged it with obligations to said defendants in reference to the property.    But after a careful examination of the record of this appeal and of the appeals heretofore alluded to, we think it very clear that the relief department of the appellant company is an entirely distinct association from the Baltimore and Ohio Employees' Relief Association and is composed of entirely separate and distinct members and it no where appears from the records of the three former appeals, which have been decided by this Court, that the lower Court has at any time assumed jurisdiction and control over the *whole* fund mentioned in the proceedings in this cause, *but only over that portion of said fund* which belonged to the non-assigning members of the extinct Employees' Relief Association.    The other part of the fund assigned to the appellant company and held in trust for the new relief department having been alluded to in the consolidated cases merely for the purpose of ascertaining the amount or proportion of the entire fund distributable to the non-assigning members.

On the 29th of February, 1896, the appellant company passed into the hands of receivers appointed by the Circuit Court of the United States for the District of Maryland. The fourth paragraph of the order of said Court appointing said receivers reads as follows : " That the said receivers be further fully authorized and instructed to continue the operation as heretofore, of the several features of the relief department of said defendant, in accordance with the regulations adopted by the president and directors of the said defendant for the government of same ; to continue to collect, and receive, and to disburse the funds of said department in its several features, as provided by said regulations, and generally to fulfill and discharge all the duties and obligations of said defendant in connection with said relief department."    Mr. Smith in his recent work on *Re-*

*ceiverships*, sec. 7, p. 23, says, "The primary and proximate effects that follow the appointment of a receiver are : The property, funds, or whatever may be the subject-matter of the litigation that come to the hands of the receiver are *in custodia legis*, and being so, will not be permitted to be interfered with, either by the parties to the suit, strangers to the suit, or other Courts of co-ordinate jurisdiction." Again the same author says, " Neither will the Court permit its receiver to be sued or harrassed by litigation without its express permission, to be granted only in exceptional cases for judicious and special reasons.   The Court first obtaining jurisdiction and appointing a receiver retains that jurisdiction, as a rule, for all purposes, settling and adjusting in the same suit, all conflicting interests of whatsoever nature between the parties that grow out of or relate to the subject-matter in controversy."

In *Beverley* v. *Brooke*, 4 Gratt. 187, the Court says, " By the order of appointment the Court takes the whole subject into its own hands ;  and ultimately disposes of all questions, whether legal or equitable, growing out of the proceeding." To the same effect are *Covell* v. *Heyman*, 111 U. S. 176 ; *Heidritter* v. *Elizabeth Oil Cloth Co.*, 112 U. S. 294 ; *Leadville Coal Co.* v. *McCreery*, 141 U. S. 475 ; *Hyland* v. *The James Roy*, 59 Fed. Rep. 784 ; *Gà. R. Co.* v. *Atlanta & F. R. Co.*, 49 Fed. Rep. 608.   The State and Federal Government, while they are distinct parts of a complete system, are each supreme within the limits of the authority confided to them ;  each government is possessed of a judiciary power commensurate with its own objects and purposes, and partaking of its supreme authority ; and the exercise of the judicial power in each is confided to the tribunals of the respective governments, and they can never come in conflict while they exercise only the authority which rightfully belongs to each.   These tribunals are invested with the general as well as incidental powers necessary to the complete administration of justice.   It is needless to pursue this inquiry further.   If there was error in the passage, by the

Circuit Court of the United States, of the order appointing the receivers of the appellant company, there were well-recognized methods by which that error could have been corrected ; either by direct application to the Court which passed the order, or by an appeal to the appropriate tribunal to correct the error if any such there was.    It is certainly not within the province or jurisdiction of this Court to super-vise the conduct of the receivers, or to interfere in any way with the discharge by the Circuit Court of its important functions.    That Court has taken jurisdiction in the prem-ises, and the fourth paragraph of its order has clearly out-lined its relation to and control over the relief department of the appellant ; we fail to recognize any other consequence that could be reasonably expected to follow an affirmance of the order of the lower Court, than loss and disaster to the many whose interests are involved in this controversy. It follows from what we have said that the order of the lower Court must be reversed with costs.

*Order reversed with costs.*

(Decided January 5th, 1898).

BRYAN, J., dissented and delivered the following opinion :

The charter of the Baltimore and Ohio Employees' Re-lief Association was repealed by the Act of 1888, chapter 527.    It was provided by this Act that it should go into effect on the first day of April, eighteen hundred and eighty-nine.    We have already had before us on three several occa-sions controversies which have ensued in consequence of the repeal of this enactment.    The cases are reported in 72 Maryland, 493 ; 77 Maryland, 566 ; and in 79 Maryland, 442.    The greater portion of the facts which bear on the questions now before us are stated in the opinions which were filed in the cases mentioned.    Nevertheless some repetition is unavoidable for the purpose of explaining the present case, and of showing the grounds of the opinion which we have formed.

A couple of days before the day appointed for the ex-

piration of the charter of the Relief Association, it made a contract with the Baltimore and Ohio Railroad Company for a conveyance to it of all its property upon certain conditions, and for certain purposes specially and distinctly set forth in the contract. It was recited in the contract that the Railroad Company had established the relief department under regulations issued by its president, which relief department was intended and was adapted to carry out the purposes and continue the business of the relief savings fund, and the building and pension features respectively of the Relief Association ; and that it was desired to wind up the business of the several features of the Relief Association, and to afford opportunity to the members of the relief feature, the depositors in the savings fund, and the pensioners of the association to retain and continue the privileges and advantages afforded them respectively in the association by becoming members of the relief feature, depositors in the savings feature, and pensioners respectively in the relief department. And the contract was made to carry into effect the purposes mentioned in these recitals. The railroad covenanted and agreed that the property of the relief feature to be conveyed should be held and applied to the payment of the liabilities of the association in connection with the business of its relief feature, and thereafter for the benefit and advantage of the members of the relief feature of the relief department ; and that the property of the pension feature and of the savings fund and building feature to be conveyed should in like manner be held, and applied to the payment of their proper liabilities, and thereafter for the benefit of the members of said features respectively. And it further covenanted and agreed that if any member of the relief feature of the association should refuse to become a member of the relief department, the value of his membership and interest in the association should be paid to said member in money. And it further covenanted and agreed that all the property, assets, credits and securities, the conveyance and transfer of which is provided for in this agree-

ment, should be kept and remain distinct and separate from the property of the company held for its railroad purposes. After the making of this contract the Relief Association transferred to the Railroad Company a large amount of assets.   This amount will be a subject of consideration in another part of this opinion.   More than nineteen thousand of the members of the Relief Association became members of the relief department, and executed assignments to the Railroad Company of their interest in the assets of the association.   By these assignments they became members of the relief department; and these instruments each contained a clause by which they agreed to be bound by all the regulations of the relief department then in force, and which might thereafter be adopted.   There was also in each assignment a clause declaring assent to, and confirmation of, the transfer of the assets made by the Relief Association to the Railroad Company *"for the purposes of the like features of the relief department respectively."*   Eleven hundred and sixty-five members of the Relief Association declined to join the relief department, and, of course, made no assignment of their interests.   In March, eighteen hundred and eighty-nine, Conley filed a bill in equity against the Baltimore and Ohio Railroad Company and the Relief Association ; and soon afterwards another bill in equity was filed by Cannon against the same defendants.   Both of these complainants. were non-assigning members of the Relief Association, and the scope and purpose of each suit were the same.   Both bills were filed by the complainants in their own behalf, and also in behalf of all the members and creditors of the Relief Association who might choose to become parties.   They both alleged that the assignment made to the Baltimore and Ohio Railroad Company by the Relief Association was *ultra vires* and void, and they prayed for the appointment of receivers to take charge of the assets of the dissolved corporation and make distribution of them.   Shortly afterwards. the Railroad Company filed a bill in equity in the same Court against the Relief Association, and each and every of

the eleven hundred and sixty-five non-assigning members of the said association.   The bill set forth the trust created by the contract with the Relief Association, and prayed the Court to take jurisdiction of the matter and direct the complainant in the administration of the trust.   These three cases were consolidated by the order of the Court.   After a long litigation the Court passed a decree requiring the .Railroad Company to account with all the members of the Relief Association who were in good standing at the time of its dissolution on March 31st, 1889; and after prescribing the terms of accounting gave the following direction (among others) to the auditors, to-wit: " They shall audit the amount due all the members when ascertained as above directed, who have assigned their interest in said association to the Baltimore and Ohio Railroad Company, upon proof of said assignment to said Railroad Company in one sum to be held by it *for the benefit* of the members of the relief feature of the relief department of said company."   An appeal was prayed by the Railroad Company, and this Court in 77 Maryland, 566, reversed the decree in a particular not connected with the matter now in hand.   In due course the auditors made their report, and after having distributed their share of the assets to the non-assigning members, distributed to the Baltimore and Ohio Railroad Company in trust for the benefit of the relief feature of the relief department of said company the sum of $548,399.04, in which sum were included certain securities.   This account was duly ratified and confirmed on the fourteenth day of December, 1895. On the twenty-sixth day of February, 1896, John Flaherty, a member of the relief department, filed a petition praying that the Railroad Company should be required to pay into Court the trust fund distributed to it by order of the Court in trust for the relief department.   After hearing in the regular order (answer having been filed, testimony having been taken and argument of counsel having been heard) the Court passed an order requiring the Railroad Company to pay into Court the amount of money embraced in the dis-

tribution made to it by the auditor's report.  The Railroad
Company has appealed.

It has been maintained by the appellant that the Court
had no jurisdiction to pass this order.  We shall examine
this question.  Cannon's bill was filed in behalf of all the
persons interested in this fund who chose to become parties
to the suit, and it prayed the decision of the Court on the
responsibilities of the Baltimore and Ohio Railroad Com-
pany to all of them.  . This Court decided that the case did
not justify the appointment of a receiver; but it was fully
recognized that Cannon had a right to demand an adjust-
ment of the interests of the members of the Relief Associ-
ation.  Conley's bill does not appear in the transcript of the
record, but we are given to understand that it was of simi-
lar import with Cannon's.  The bill of the Baltimore and
Ohio Railroad distinctly brought before the Court the rights
of all the parties concerned in the affairs of the Relief Asso-
ciation.  As has been stated, all these cases were consoli-
dated.  Consequently every question was before the Court
which was validly presented in each of them, and the Court
had all the jurisdiction which could be derived from all the
cases combined.  The Railroad Company, by virtue of the
contract hereinbefore mentioned, being possessed of the funds
and assets of the Relief Association for the purpose of
carrying out the objects of the agreement, duly represented
in the litigation all the members who had made assign-
ments.  It was its duty to hold the property for the benefit
of the assigning members after the payment of the liabil-
ities properly chargeable on it.  It is a necessary consequence
that it had the right and power to protect it by represent-
ing the members in any litigation which might arise, and it
was its duty to do so.  This consequence is also evident
from the absolute impossibility of bringing the twenty thou-
sand assigning members into Court as parties litigant to
defend the fund.  In *Kerrison* v. *Stewart*, 93 United States,
160, it was held that where a trustee represents his benefi-
ciaries in all things relating to their common interest in the

trust property, the beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust, nor to one by a stranger against him to defeat it in whole or in part, and that in such cases the trustee is in Court for them and in their behalf. Many illustrations might be given of this principle. One of the most familiar is the case of an executor, whose duty is to protect the interests of the estate, and who prosecutes and defends suits which concern the augmentation or diminution of the personal assets without the joinder of residuary legatees, or any other persons interested in the estate. In *Lucas* v. *McBlair*, 12 Gill & Johnson, 1, the doctrine of representation was declared in the fullest manner, where trustees held property for a large number of persons who could not be made parties without great hardship and inconvenience. The case involved the rights granted to Lucas and others by an Act of Assembly to raise by sales or drawing of schemes of lotteries, the requisite money for the construction of an armory and town hall in the city of Baltimore. But in the determination of the questions which arose, it became necessary to consider the doctrine which we have stated. This Court gave its full assent to the opinion of the learned Story in his work on *Equity Pleading*, quoting at large from it as follows: "It has been well remarked by an eminent author, in many cases, that the expression, that all persons interested in the subject must be parties to the suit, is not to be understood as extending to all persons who may be consequentially interested. In all cases of bills by creditors, and legatees, the persons entitled to the personal assets of a deceased debtor, or testator, after payment of the debts or legacies, are not deemed necessary parties, though interested to contest the demands of the creditors and legatees." And also as follows: "Courts of Equity do not require that all persons having an interest in the subject-matter, should, under all circumstances, be before the Court as parties. On the contrary, there are cases in which certain parties before the Court are entitled to be deemed the full

representatives of all other persons, or at least so far as to bind their interests under the decree, although they are not or cannot be made parties. Thus, for example, where real estate has been purchased by a joint fund, raised by a subscription in shares of more than two hundred and fifty subscribers, and the property had been conveyed to certain persons as trustees for the subscribers; and afterwards a bill was brought against the trustees for the sale of the real estate, under a mortgage made in pursuance of the trust, it was held, not necessary for the subscribers to be made parties to the bill; for the trustees, by the very nature and constitution of such a trust, must be held sufficiently to represent the interest of all the subscribers, and a different doctrine would be attended with intolerable hardship and inconvenience, as it might be impossible to make all the subscribers parties." One of the principal objects of the bill filed by the Railroad Company was to ascertain the extent of the interests of the non-assigning members of the Relief Association. Yet this manifestly could not be done without also ascertaining the correlative interests of the other members in the same funds. The fund was to be apportioned between the two sets of owners, and the shares of each were increased or diminished by the amounts allotted to the other set; necessarily it was required that the shares of each set should be determined. The Railroad Company duly represented the twenty-odd thousand assigning members, and did not and could not make them parties to the suit. Its right to represent this large body of members was fully recognized by the Courts throughout the litigation. It must be seen that all the members of the Relief Association have been made parties to the proceedings in these consolidated cases; the non-assigning members by name, and the assigning members by representation. It is only because they are parties, that members of this latter class are bound by the audit which determined the amount which the Railroad Company is to hold for their benefit. By the consolidation of the different cases, the

Court had full and complete jurisdiction over all the parties interested in this litigation, and over all the subjects embraced in the different suits.

A question has been made as to the right of Flaherty to proceed by way of petition.   The large sum of money already mentioned had been audited to the Railroad Company *in trust* for the benefit of the relief feature of the relief depertment.   Flaherty was one of the members of the relief department.   The moneys held by the Railroad Company in trust for it, were under the jurisdiction of the Court; and of course Flaherty had a right to apply to the Court to secure the fund if it should be in danger.   And there could be no more appropriate method of making such an application than by petition.   All the other members of the relief department were in Court as parties by representation in the person of their trustee, the Railroad Company. It would cause a most useless and unjustifiable accumulation of costs to file an original bill for the purpose of bringing before the Court the matters which were already on record in the litigation between the parties concerned in the subject on which the action of the Court was desired. There is no rule of practice in this State which sanctions such procedure.   Without considering any vexed questions of practice which have been the subject of controversy in other jurisdictions, we are content to abide by the rule which has been established by the wisdom and thoughtful providence of our predecessors.   In *Hayes* v. *Miles,* 9 Gill & Johnson, 198, it was said: "A petition may not in all cases be the proper course to reach a fund in chancery: as where new parties are to be made, not necessary to have been made to the original bill, and where the investigation may involve inquiries calculated, by protracting the cause, to delay others, not having an interest in such controversy.  · But we think it may be safely stated as a general rule, that a petition is the proper mode of affecting a fund in equity where no other parties are to be brought in to litigate the application, than such as are, or

ought to have been parties to the original bill.'' We believe
that this is the settled practice in this State. A similar
course was approved in *Balch* v. *Zentmeyer*, 11 Gill & John-
son, 283. And *Hayes* v. *Miles*, has been repeatedly cited
as a decisive authority. *Griffith* v. *Parks*, 32 Maryland, 5;
*Thomas* v. *Farmers' Bank*, 46 Maryland, 56; *Brown* v.
*Thomas*, 46 Maryland, 641.

Flaherty's petition alleged that the funds which had been
allotted to the Baltimore and Ohio Railroad Company by
order of the Court in trust for the relief department had not
been invested, but had been borrowed by the Railroad Com-
pany to be carried as a part of its floating debt. On the thir-
tieth day of Nov., 1895, an entry was made on the books
of the Baltimore and Ohio Railroad Company shewing a
money credit of $364,666.56 in favor of the relief depart-
ment. This amount is $25,606.48 less than the sum of
money with which the B. & O. Railroad was charged in the
audit and does not include the securities. The ninth regu-
lation of the relief department is in these words : '' All
moneys and securities of the department, with the exception
of the mortgages made to secure loans from the savings
feature, shall be entrusted to the official custody of the
treasurer of the company, to be held subject to proper requi-
sitions. All such securities will be held in the name of the
company in trust for the relief department. Interest at the
rate of four per cent. per annum will be paid on the monthly
balances for cash deposited with the treasurer for the sev-
eral features of this department, including in such balances
the amount of checks not presented for payment or un-
claimed on the last day of the month.'' It is important to
ascertain in whose custody the moneys and securities were
at the time the petition was filed. Mr. Ijams, the treasurer
of the Railroad Company, was examined as a witness. He
testified that he had been the treasurer for thirty-seven years.
We make an extract from his testimony as it appears in
the record :

"3rd Int. During your connection with the Railroad Com-

pany as treasurer, have the moneys deposited by the Relief Association up to March 31st, 1889, and by the relief department since that time been kept separate from the moneys of the B. & O. Railroad Company?

A. I presume so ; that is a question the auditor will have to answer.

4th Int. In what banks were the moneys of the B. & O. Relief Department kept prior to the time of the receivership?

A. There was no separate bank account kept by the B. & O. Relief Department; they were kept right in with the other moneys of the B. & O.

5th Int. Did you have in your hands the securities belonging to the relief department?

A. I was the custodian of the boxes in which they were contained.

6th Int. Do you know what securities belonging to the relief feature of the relief department were in your possession at the time of the appointment of the receivers?

A. I do not know the contents of the boxes.

7th Int. Who has the authority to open these boxes?

A. The chairman of the relief committee, Aubrey Pearre, and the chief clerk of the relief department, John P. Hess.

8th Int. Did you or not in August, 1895, receive any orders from any official of the Railroad Company to hold a large sum of money for the benefit of the relief department?

A. I do not recollect of receiving any.

9th Int. Do you remember of receiving any order to transfer or hold any sum of money amounting to $300,000 or $400,000, for the benefit of the relief department, since the first day of August, 1895, up to the time of the appointment of the receivers for the B. & O. Railroad Company?

A. I do not."

Mr. Pearre was also examined as a witness. We make an extract from his testimony :

"1st Int. Are you a director of the Baltimore and Ohio R. R. Co.?

A. I am a director of the Baltimore and Ohio R. R. Co.

2nd Int. Were you a member of the board of directors through the month of Sept., 1895 ?

A. Yes, sir.

3rd Int. And continuously from that time until now ?

A. Yes, sir.

4th Int. Have you been during the past year a member of the committee of management of the relief department ?

A. I have, sir.

5th Int. Do you have charge of the investment of funds held by the railroad in trust for the relief department ?

A. The committee on the relief department has charge of those investments.

6th Int. Can you state what investments your committee has made of the funds audited to the Baltimore and Ohio Railroad Co. in the Baltimore and Ohio Employees' Consolidated Cases, by the report of the auditor finally ratified September 14th, 1895 ?

A. We have only invested $2,500 in City of Brunswick Bonds.

7th Int. Where is the balance of that money now deposited ?

A. With the treasurer of the Baltimore and Ohio R. R.

8th Int. Do you know in what banks it is deposited ?

A. I do not.

9th Int. Can you state whether, at the time this auditor's report was ratified, any separate account was opened in any bank by the Railroad Company in which this special fund was deposited ?

A. I cannot.

10th Int. Did your committee make any report advising that such a special account be opened ?

A. No, sir.

11th Int. Do you know whether the treasurer can now point out where this particular fund is to be found, or whether it was merged in the general cash balances of the R. R. Co. ?

A. I cannot ; I do not know.

12th Int. What officer is possessed of this knowledge ?

A. That I do not know.

13th Int. What inquiries have you made as to the where-abouts of this trust fund under your charge?

A. We have made no special inquiries.   All the funds of the relief department passes through the hands of the treas-urer.   I do not know whether they are separated or not."
He also testified that he had been chairman of the com-mittee on the relief department six or eight years.   It is shown by the testimony of Mr. Ijams that on the thirtieth day of Nov., 1895, the balances of the Railroad Company in bank amounted to $1,306,869.90; but of this amount certain deposits in the hands of the Maryland Trust Com-pany and of the United States Trust Company were made for special purposes, and were not subject to check for any gen-eral use of the Railroad Company.   These deposits amounted in the aggregate to $1,387,500.00 ; so that the Railroad Company had overdrawn its account in bank and had noth-ing in the hands of its treasurer which could be applied to the payment of the credit on its books in favor of the relief department.   So it is shown that the Railroad Company has broken its covenant with the Relief Association, whereby it agreed that all the property, assets, credits, &c., of the association which were to be conveyed to it should be kept distinct and separate from the property of the company held for its railroad purposes.   Neither has the ninth article of the regulations of the relief department been observed, which required that the moneys should be entrusted to the official custody of the treasurer of the Railroad Company to be held subject to proper requisitions.   The Baltimore and Ohio Railroad Company committed a breach of trust of a very serious character.   The trust fund confided to it has disappeared, and it is not shown in the evidence what has become of it.   The relief department is one of its agencies established, regulated and controlled by it.   A construction cannot be given to the ninth article of the regulations, issued March 15th, 1889, which would release the Railroad Com-pany from its solemn contract under seal made on the twenty-

ninth day of the same month.    Far less would a Court of
Equity regard this article as an excuse for the misapplica-
tion of funds which by its own order it had placed under
the control of the trustee.    The insolvency of the trustee
and the placing of its property in the hands of receivers are
proved in the proceedings.    The duty of a Court of Equity
to preserve trust property when endangered is imperative.
It would be idle to discuss a matter so familiar ; and it
would be difficult to conceive how the trust property could
be in greater peril.    Flaherty proceeds in this case in his
own behalf and in behalf of all others having a like interest
in these funds.    He is not invested with a separate and di-
visible share of them ; but his interest is involved in a proper
administration of all the trust property.    He has a right to
protect himself, and in protecting himself, he is at the same
time securing the rights of all others interested in the pres-
ervation of the trust property.    The fact that his individual
right is of small pecuniary value imposes no disability upon
him in the view of a Court of Justice.    His rights must be
protected by the law.    And in this particular case he is pro-
ceeding for the benefit of all others similarly situated.    The
order of the Circuit Court requiring the fund to be paid into
Court was a wise and provident step for securing it for the
benefit of all concerned in it.    It is the usual course taken
in like cases.    It was pursued in *Ehlen* v. *Ehlen*, 63 Mary-
land, 267.    In that case on the petition of a party entitled
to one-fifth interest in trust property, the Court ordered the
trustee to bring into Court the securities and money held
in trust, it being shown that the property was in danger.
This order was passed, notwithstanding the fact that the
other parties interested in the trust were willing that the
trustee should retain the property.    The Court said that
the fund was an entirety, and that the petitioner's interest
could not be protected without securing the whole fund,
and this the petitioner had a right to do, although the other
persons interested in it were willing to relinquish their rights.
It is well to notice that the petition was filed in the *Ehlen*

*case*, in a suit where by a decree in equity property had been divided, and certain stocks and bonds had been allotted to Ehlen, the trustee, to hold in trust according to the provisions of his father's will.    It was not suggested in any quarter that the jurisdiction of the Court over the trustee terminated when by its order the stocks and bonds were allotted and delivered to him, nor was it suggested that a petition was not the proper mode of proceeding against him by a beneficiary of the fund.    If the trustee is unable to produce the fund, it must show some satisfactory reason for its inability, and must disclose where the fund is, so that it may be recovered for the benefit of the trust.    As germane to this matter the remarks of two eminent Judges may be quoted.    A bill in equity had been filed to restrain a breach of trust, in behalf of an infant interested with many others in the property, but whose own interest in the property was very small.    In deciding the case SIR W. M. JAMES, L. J., said : " The *cestui que trust* has a right in this Court to prevent the sale when a breach of trust has been committed, and it would be *pessimi exempli* for us to say : ' A breach of trust has been committed, but the amount which any one *cestui que trust* suffers by reason of that breach is not sufficient to justify a chancery suit.'    That is not an effectual answer in this Court."    And LORD JUSTICE MELLISH said : " I also agree that the small interest of the infant can make no difference. The interest of each of them may be so small that no one of them might think it worth while to file a bill at his own risk, but the bill being filed on 'behalf of one infant, we must look at the whole substantial interest which is in question, not merely at the individual interest of the infant."    8 Law Reports, Ch. App. 902.

Flaherty's petition in this case was filed on the twenty-sixth day of February, 1896.    Subsequently to this petition proceedings were instituted in the Circuit Court of the United States for the District of Maryland, whereby all the property of the Baltimore and Ohio Railroad Company was placed in the hands of receivers.    When a Court once

rightfully acquires jurisdiction over a subject, no other Court can interfere with the matter by subsequent pro-ceedings. "The rule is well established, that when two Courts have concurrent jurisdiction over the same subject-matter, the Court in which the suit is first commenced is entitled to retain it, and the other co-ordinate Court has no authority to interfere, and will, as soon as judicially informed of the pendency of the prior suit, dismiss the subsequent proceedings." *Dunnock* v. *Dunnock*, 3 Maryland Chancery, 150. To the same effect *Albert* v. *Winn*, 7 Gill, 447; *Jenkins* v. *Simms*, 45 Maryland, 537. All Courts desire that the administration of justice shall be conducted in an orderly and harmonious manner. The rule which has been universally adopted prevents conflict of jurisdiction; a great evil which cannot be too earnestly deplored. There is no reason to apprehend anything of the kind in this case. If the fund which is the subject of this controversy shall be found to be in the possession of the receivers, we shall confidently believe that the United States Court will promptly order it to be delivered to the Court which has the rightful custody of it.

(Filed January 5th, 1898).